ADDA, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8883.  Promulgated August 18, 1947.

*Benjamin Mahler, Esq.*, for the petitioner.
*J. Frost Walker, Esq.*, for the respondent.

**OPINION.**

JOHNSON, *Judge*: In determining the deficiency for the fiscal year ended June 30, 1942, the Commissioner recomputed the amount deductible as a net operating loss for the taxable period ended June 30, 1941, making several adjustments not here in issue. Petitioner now asserts a right to two deductions not claimed or allowed, and the issues so raised will be considered.

1. The first involves petitioner's right to deduct the full amount of $199,660 paid as real estate taxes for the year July 1, 1940, to June 30, 1941, on the building which petitioner purchased on August 5, 1940, from the 1514 Broadway Corporation. On its income tax return it deducted only $180,803.22, and explains in an allegation of its petition that the remaining $18,856.78 was a "cost adjustment between it and the seller." For reasons undisclosed the Commissioner increased the deduction claimed by $10,856.78, and petitioner, accepting this increase, now contends that the remaining $8,000, making up the full $199,660, is likewise deductible. While the unproved allegation of the petition that the $18,856.78 was a cost adjustment suggests that this part of the tax was constructively paid by the seller and not by petitioner, neither the stipulation nor the issue as framed and argued by the parties takes account of this possibility, and in our disposition of the question we shall assume, as the parties themselves have, that petitioner paid the tax of $199,660 without reimbursement of any part or any adjustment which might affect deductibility.

Decision of the issue as presented depends upon whether the taxes accrued or became a liability imposed upon the vendor prior to petitioner's acquisition of the property. If such tax had accrued prior thereto, then it was a tax obligation of petitioner's vendor and petitioner could not deduct same as taxes "paid or accrued," even though paid by it, but tax payments by petitioner under such contingency would, for income tax purposes, be deemed part of the purchase price and an addititonal cost of the property. *Magruder* v. *Supplee*, 316 U. S. 394.

When did these taxes accrue? Petitioner says on October 1, 1940,

when due, and as this was subsequent to its purchase of the property on August 5, 1940, the taxes are deductible. Respondent contends the accrual date was prior to August 5, 1940, to wit, when the real property assessment rolls were delivered to the proper officer, with warrants annexed, authorizing collection of the taxes.

Petitioner cites *Robert LeRoy*, 4 T. C. 70; affd. (C. C. A., 2d Cir.), 152 Fed. (2d) 936. There, as here, the taxes involved were New York City realty taxes imposed by the same law (New York City charter) for the same taxable year; the taxpayer there acquired title to the realty on September 30, 1940, and on October 29, 1940, paid the first half of the city's taxes due October 1, 1940, for the fiscal year ended June 30, 1941, and the Commissioner disallowed the taxpayer's claim for deduction on the ground that the taxes had been assessed against the property prior to the taxpayer's acquisition and that liability thereby attached to the taxpayer's vendor. The court affirmed our holding that the full amount of taxes paid by LeRoy was deductible, since on the date he acquired title to the realty there was neither a tax lien nor personal liability on the part of the seller to pay the tax.

Respondent contends that the *LeRoy* case is distinguishable, since there the seller was a nonresident of the taxable district in which the property was located, while petitioner's vendor, the 1514 Broadway Corporation, had its sole office and place of business within the same taxable district as the realty; its name was correctly entered on the assessment rolls; and, hence, under authority of section 71 of the tax laws of the State of New York, the 1514 Broadway Corporation was personally liable for the taxes.

Petitioner replies that its vendor was not personally liable for the taxes because (a) section 71 of the general tax law of the State of New York is not applicable to municipal real estate taxes imposed under the charter of New York City, which contains no provision for personal liability for real estate taxes, citing *MacGregor* v. *Johnson-Cowdin, Emmerich, Inc.*, 39 Fed. (2d) 574, an opinion by Judge L. Hand; and (b), in the alternative, that even if section 71, imposing personal liability, is applicable to New York City taxes, under the facts in this case the taxes in question did not become due until October 1, and the tax lien did not attach until that date, which was subsequent to petitioner's acquisition of the title; hence there could be no personal liability against petitioner's vendor.

Petitioner's first contention was not clearly determined in the *LeRoy* case, *supra*. The Tax Court's opinion in passing thereon, after quoting the terms of section 71 of the general tax law, which had been cited and relied upon by respondent, used this language:

\* \* \* It becomes unnecessary, however, for us to examine the evidence on this phase of the question, as in no event would personal liability for the amount of the taxes arise prior to the date of the attachment of the lien. *Berri* v. *City of*

*New York,* 16 N. Y. S. (2d) 86; affd., 19 N. Y. S. 347; *United States* v. *Certain Lands in the Borough of Brooklyn,* 41 Fed. Supp. 51; cf. *United States* v. *44,549 Square Feet of Land in the Borough of Brooklyn,* 41 Fed. Supp. 523.

The Second Circuit Court's opinion in the *LeRoy* case, in disposing of this issue, said:

Just what is the nature of the tax liability of an owner of New York real estate is not always easily to be determined as is shown by the opinion of Judge L. Hand in *McGregor* v. *Johnson,* 2 Cir., 39 F. 2d 574. We need not decide that vexed question now for it is well settled that an owner who is a non-resident of the tax district in which the property is located is never personally liable. *McGregor* v. *Johnson, supra.* * * *

No case decided by either state or Federal court has been cited by either party which passes directly or with finality upon whether section 71 of the general tax law of New York State, which imposes personal liability upon a resident taxpayer, is applicable to real estate taxes imposed by New York City under its special charter.

In *MacGregor* v. *Johnson-Cowdin, Emmerich, Inc., supra,* Judge L. Hand's reasoning in effect holds that section 71 is not applicable, since the New York City charter provisions are in conflict with the general tax law, and there is no provision in the charter made for enforcing personal liability. He concludes that the charter, "which prescribes everything in detail * * * was presumably intended to be self-sufficient and no case has held the contrary."

Judge Hand also quotes therein from opinions by Gaynor, J., "an expert in such tax matters," who thought that personal liability did not exist. The opinion in *MacGregor* v. *Johnson-Cowdin, Emmerich, Inc.,* expressly states, however, that the decision therein is based upon: (1) That the taxes involved are against a "non-resident" and therefore involved no personal liability, and (2), if personal liability, there was no way to enforce it, except by resort to the land.

More than 17 years have passed since Judge Hand, in *MacGregor* v. *Johnson-Cowdin, Emmerich, Inc.,* declared that the New York City charter was presumably intended to be self-sufficient and "no case has held to the contrary"; and we are unable to find even now a case declaring a contrary doctrine. It would seem that with the volume of litigation, both in state and Federal courts affecting New York City realty taxes, if section 71 of the general tax law of New York were applicable, some court would have so declared.

Based upon the sound reasoning of Judge Hand in *MacGregor* v. *Johnson-Cowdin, Emmerich, Inc.,* and also in the absence of any judicial determination holding section 71 applicable, we incline to the opinion that section 71 has no applicability to New York City real estate taxes as here involved.

Since the New York City charter under which the taxes are imposed contains no provision for personal liability, if section 71 of the general tax law of New York State is not here applicable, then petition-

er's vendor was not personally liable for the payment of the taxes, regardless of whether such vendor was a resident or nonresident of the tax district.

We agree with petitioner's alternative proposition that, even if section 71, imposing a personal liability upon a resident of the tax district, is applicable to New York City realty taxes, it would be ineffective in the pending case, since the taxes in question did not become due, and neither did the tax lien attach, until October 1, after petitioner acquired title to the property, and hence the petitioner, and not his vendor, was liable for their payment.

Only the owner of the property on the date on which the tax accrued may avail himself of a deduction under section 23 (c) for its payment.

When personal liability exists for the payment of taxes, the accrual date of such liability depends upon the local law imposing and governing such taxes, and the apparent wide variety of holdings as to such date is due to the variance of the tax laws in different jurisdictions.

Discussing the question as to the date when taxes accrue or become an obligation, we said in *Lowell H. Chamberlain*, 43 B. T. A. 259, 261:

In some cases involving the question here we have had to deal with statutes whereby the tax becomes a lien on the land on a date specified in the statute. *Gatens Investment Co., supra; Theodore Plestcheeff*, 35 B. T. A. 508; affd., 100 Fed. (2d) 62. In those cases we have held that the tax became due when the lien attached. In other cases, the statute has failed to specify the date on which the lien or obligation arises and we have made an examination of the whole taxing process, seeking the time at which the tax became fixed and certain as an obligation. Thus we held in *Henry J. Burchell, Jr., Executor*, 41 B. T. A. 55; affd., 115 Fed. (2d) 681, that the accrual date of the tax was the time at which the state warrant attached. In *M. P. Klyce, Administrator*, 41 B. T. A. 194, the date on which the tax became due and payable was held to be the accrual date under Alabama law. In *Texas Coca-Cola Bottling Co., supra*, we held that the date of listing the land for assessment was the time at which the taxes levied thereon accrued.

The New York City charter under which the real estate taxes here involved were levied and assessed expressly and definitely fixes (1) the date or dates when same shall be due and payable, and (2) the date when the tax lien shall attach and become a charge against the property. In order to eliminate any question as to any claim of prior maturity or attachment of lien, after fixing the definite date of maturity it is followed with the words "and not earlier." We quote from section 172, New York City charter:

All taxes upon real estate for each fiscal year shall be due and payable in two equal installments, the first of which shall be due and payable on the first day of October in such year, the second of which shall be due and payable on the first day of April in such year. * * *

All taxes shall be and become liens on the real estate affected thereby and shall

be construed as and deemed to be charged thereon on the respective days when they become due and payable, *and not earlier*, and shall remain such liens until paid. [Italics supplied.]

In *Henry J. Burchell, Jr., Executor*, 41 B. T. A. 55; affd. (C. C. A., 2d Cir.), 115 Fed. (2d) 681, the real estate tax was imposed by virtue of a special statute applicable to Suffolk County, New York, which expressly stipulated that "All taxes in the tax roll *shall be due and payable* on the date of the warrant annexed thereto" (italics supplied) and we held that such maturity date so fixed by statute was also the "accrual date" of the taxes and that the owner of the land on that date was the person upon whom the tax liability was imposed and such person so paying the taxes was entitled to take a deduction therefor. See secs. 23 (c) and 43, Revenue Act of 1934 and Internal Revenue Code. The Commissioner's position in that case, which we upheld, was the same as petitioner's here, i. e., that the taxes due do not "accrue" before they become payable. That case, which we regard as important here, was not cited by either party to this proceeding. Respondent contends in the pending case that the taxes accrued when the assessment was completed and the tax rolls were delivered to the proper officer, with warrants annexed, but we think a sufficient answer to this contention is that in the *Burchell* case the statute expressly fixed such time as the accrual date or date of maturity, while here the New York City charter fixes the accrual or maturity date of the first payment of the taxes as of October 1, after title had been acquired by petitioner on August 5.

The *Burchell* case is of further significance and particularly applicable here since Judge Hand's opinion therein, speaking for the Circuit Court of Appeals for the Second Circuit, cites with approval two cases decided by the state courts of New York involving, as here, the question of the accrual date of real estate taxes in New York City imposed by its special charter. The first, *In re Appell*, 199 App. Div. 580; 192 N. Y. S. 136; affirmed without opinion, 234 N. Y. 600; 138 N. E. 462, is authority for the holding that section 194 of the charter of Greater New York, as then constituted, had fixed the date when taxes should be "due and payable" and that such date, and not the date when the assessments were completed, determined the tax liability of the owner of the property. The *Appell* case overruled other contrary opinions decided prior to the amending of the New York City charter fixing maturity date of the taxes. The other case referred to by Judge Hand, and to the same effect as the *Appell* case is *In re Eckenroth's Will*, 167 Misc. 632; 4 N. Y. S. (2d) 582. See also *In re Collin's Estate*, 158 Misc. 798; 286 N. Y. S. 506; *In re Lindsay's Estate*, 18 N. Y. S. (2d) 800; *Berri* v. *City of New York*, 16 N. Y. S. (2d) 86; affd., 259 App. Div. 453; 19 N. Y. S. (2d) 347, and other cases cited by us in the *LeRoy* case. In *Estate of Theresa Seagrist*, 42 B. T. A. 1159, we held that

New York City real estate taxes are deductible from the gross estate only in case the tax lien attached for them prior to decedent's death.

Two cases relied upon by respondent, *Magruder* v. *Supplee, supra,* and *S. E. Bernheimer,* 41 B. T. A. 249; affirmed per curiam (C. C. A., 2d Cir.), 121 Fed. (2d) 454, are both distinguishable. *Magruder* v. *Supplee* was a Maryland case where, under the local tax law, the lien attached and the taxes became due on January 1, and the taxpayer did not acquire title until May 10 thereafter, and hence his vendor had become liable for the taxes prior to the sale. As the Supreme Court remarked in the opinion, "an action of assumpsit could have been brought against him [the vendor] for the taxes at any time after the due date," and hence payment by the taxpayer after his purchase was not deductible under section 23 (c), Revenue Act of 1936.

The *Bernheimer* case is distinguishable here for the same reason that it was in the *LeRoy* case, and in pointing out this distinction in the *LeRoy* case the Second Circuit Court's opinion said:

\* \* \* The issue there [*Bernheimer* case] involved the right of the owner of property who reported its income on the accrual basis to accrue and deduct taxes after they had been assessed but before they were due, where ownership remained unchanged.

A privilege accorded the taxpayer to accrue taxes before they are due, when his books are kept and returns are made on the accrual basis, does not thereby impose a liability to pay taxes before they become due. Besides, in the case at bar, there is no intimation that the petitioner's vendor kept its books or made its income tax returns on the accrual basis.

We hold petitioner is entitled to deduct all taxes paid by it since, at the time of its acquisition of the property, there was neither a tax lien nor personal liability on its seller to pay same.

2. The second issue, affecting the amount deductible as a net operating loss, involves petitioner's right to deduct interest of $18,319.37 from its income of the taxable period ended June 30, 1941. In recomputing the net operating loss, the Commissioner added to income reported $18,319.37, representing advance rents which petitioner collected and did not report because they were "credited against the due date"—presumably the fiscal year ended June 30, 1942. Petitioner does not contest the determination that these advance rents constituted taxable income in the year of receipt, but seeks the deduction of an equal amount as interest because, under the provisions of the mortgage deed securing the payment of installments due the vendor on the purchase price of the building:

From the 5th day of August, 1940, to the 1st day of December, 1941, the interest [on unpaid installments] shall be the entire net income (as net income is hereinafter defined) from the \* \* \* premises. \* \* \*

The parties have not argued and we need not consider whether an amount computed as indicated may be treated as deductible interest because called "interest" in the deed. We shall assume that it may. Petitioner has made no attempt, however, to establish that the amount of advance rents was "net income" as defined by another provision of the deed, and it would seem that there could be no determination of "the entire net income" from August 5, 1940, to December 1, 1941, until the latter date which fell within petitioner's fiscal year ended June 30, 1942. No evidence was introduced to show when the amount was accrued as interest on petitioner's books, or that it was not reflected in the $141,300.87 deducted as interest on the return for the taxable period ended June 30, 1941, although failure to accrue as income might connote failure to accrue as interest. As precise computation of "the entire net income" of the period was not possible prior to December 1, 1941, and as the first payment was required by the mortgage deed on December 15, 1941, there was reason for accruing all the "interest" in the fiscal year 1942. Petitioner has not shown that all of it or at least a part comprising the advance rents was not accrued and deducted on its income tax return for that year. Consistency in accounting practice indeed would so require, and we shall not assume that the deduction of the advance rents, reduced to reflect net income as defined in the deed, was not included in the interest deduction of $180,338.72 claimed on the return for the fiscal year 1942. In the absence of adequate evidence, we can not sustain petitioner's claim to the deduction sought.

3. The third issue involves the deductible amount to which the petitioner is entitled as depreciation on its building. To determine this, two questions must be decided: (1) The cost of the building to the petitioner to be used as a basis in computing depreciation, and (2) the useful economic life of the building. Both questions are in dispute.

To ascertain what the building cost petitioner it is necessary to determine what amount of the total purchase price of $5,800,000 paid for the building and lot was attributable to the building alone. On the hearing petitioner offered evidence that the reasonable amount of such total consideration for the building only was $1,500,000, while respondent's evidence fixed same at $1,150,000. It was evidently difficult for petitioner to determine the cost of the building, for in its income tax returns for both 1941 and 1942 it placed the cost of the building at $1,-150,000, while in its petition for redetermination the cost of the building was alleged "to be not less than $1,740,000," and in its evidence and also in its brief filed herein such cost was placed at $1,500,000. After considering all the evidence upon this subject, we find that respondent's determination of the base value to be used in such computation, to wit, $1,150,000, is correct and the proper base. Such was the amount claimed by petitioner's own determination in its income tax returns

for two years, and the evidence at the hearing fails to convince us that the valuation so determined by respondent was erroneous.

The other phase of this issue is whether the useful economic life of the building from the date of petitioner's acquisition was 36½ years as determined by respondent, or 20 years, as contended by petitioner.

There was evidence supporting both contentions, but, without reviewing it in detail, from all the facts and circumstances we have reached the conclusion that, while the structural integrity of the building is such that it may last for 40 years or more, as of August 5, 1940, it had an economic and useful life of not to exceed 21 years. Situated on Broadway near Times Square, it is one of the most valuable business sites in New York City, and the assessed taxable value of the building and lot for New York real estate taxes for 1941–1942 was $6,725,000, an increase in value of about one million dollars within a year after petitioner became its owner. The total floor space of the building is not sufficiently large to produce revenue commensurate with the value of the lot, and this disproportion will likely increase rather than diminish. When the building was constructed in 1935, its then owners realized its inadequacy to produce sufficient revenue for the valuable lot, but New York had not then recovered from the 1930 depression; there were fifteen million square feet of vacant office space in New York, and it was deemed inexpedient to erect a taller building, there being no demand then for additional space, and it would have been difficult to finance such construction at that time, so its builders determined to erect the present two-story structure, which is known in New York parlance as a "taxpayer," since it was designed to pay the real estate taxes plus some slight revenue, with the expectation that later it would be removed and a taller building erected. That such was in contemplation is evidenced by the fact that the leases to the various tenants of the building, with one exception, contained cancellation clauses at the option of the owner, two of the leases expressly providing for their cancellation "if landlord should decide to demolish the building." Not only the location, but the large size of the lot made it very desirable for the erection of a very tall building, the lot having a frontage of 203 feet on Broadway, extending from 44th to 45th streets, with a frontage on each of these streets of 183 feet and 256 feet, respectively. The building was so constructed that additional stories could not be added.

While it is impossible to forecast the future, we think it reasonable under the evidence to determine that, within a period of 21 years from the date of petitioner's purchase of the property, the present building will be removed and a much taller one erected that will produce revenue more in keeping with the value of the lot. Petitioner's contention is 20 years, but since the lease to Bond, the largest tenant, covers 21 years from the date of purchase, we think it reasonable that

the period of depreciation should be sufficiently long to cover the duration of this lease.

There was considerable evidence as to` the expanding business of Bond Stores, Inc., the tenant which occupied most of the building, and the inadequacy of space for Bond's business. Respondent claimed that petitioner in effect was urging that, because petitioner was 100 per cent subsidiary of Bond and owned by Bond, their interests should be treated in common, and respondent urged that, since they were two separate and distinct corporations, they should be so treated, regardless of ownership.

We find it unnecessary to pass upon these questions, since under the evidence we think that, regardless of who were the tenants of the building and their respective needs, the owner of the building, for economic reasons as was heretofore pointed out, will be required to demolish the building and erect another within the time indicated, designed to produce revenue more nearly commensurate with the value of the lot.

*Decision will be entered under Rule 50.*