Samuel Saffan v. Commissioner.
Saffan v. Commissioner
Docket No. 56629.
United States Tax Court
T.C. Memo 1957-184; 1957 Tax Ct. Memo LEXIS 61; 16 T.C.M. (CCH) 822; T.C.M. (RIA) 57184; September 30, 1957
*61 John F. Dailey, Jr., Esq., and Samuel Goldwasser, Esq., for the petitioner. A. Jesse Duke, Jr., Esq., and John A. Dunkel, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined the following deficiencies and additions in regard to petitioner's income tax: Addition to Tax
Year
Deficiency
Sec. 293(a)
1945
$35,283.81
$1,764.19
1946
1,197.59
59.88
1947
790.05
39.50
The main issue to be decided is whether respondent was correct in determining that petitioner understated his taxable income as evidenced by certain deposits in petitioner's brokerage accounts in 1945 and in his checking account in 1945 through 1947. Additional questions are whether petitioner is entitled to a deduction in 1945 through 1947 for alleged automobile and entertainment expenses; whether petitioner is entitled to additional deductions in 1947 for interest and real estate taxes; and, if a deficiency exists for any of the years in issue, whether the deficiency is due to negligence thereby subjecting petitioner to the addition to tax provided in section 293(a), Internal Revenue Code of 1939. Findings of Fact
*62 Certain facts are stipulated and are hereby found. Petitioner, an individual, resides in Brooklyn, New York, and filed his returns for the periods in issue with the collector of internal revenue for the third district of New York. An accountant prepared these returns for petitioner. Since June 15, 1932 and during the years 1945 through 1947, petitioner rented a safedeposit box at the Amalgamated Bank of New York, henceforth called Amalgamated. During the years in question, petitioner maintained a checking account at Amalgamated, and beginning May 28, 1946 he maintained a checking account at the Fiduciary Trust Company. Petitioner made 49 bank deposits totaling $36,645.51 in 1945, 22 bank deposits totaling $75,979.33 in 1946, and 17 bank deposits totaling $17,773.73 in 1947, with Amalgamated. Of these deposits, respondent determined that 41 deposits totaling $27,724.91, 9 deposits totaling $3,167.50 and 14 deposits totaling $3,989.75, in the respective years, represented unexplained bank deposits and therefore constituted taxable income. During the years 1945, 1946 and 1947, the total debits against petitioner's account at Amalgamated were $37,987.01, $76,551.95, and $12,528.62, *63 respectively. In 1946, petitioner made 25 visits to the safe-deposit box in his bank. Four of these visits were on the same days on which he made $1,725 of contested deposits. Three of these visits were made within 1 week prior to his making 4 contested deposits totoaling $1,142.50. Petitioner made the remaining contested deposit of $300 on December 10, 1946. He received repayment of a $300 loan in December 1946. In 1947, petitioner made 19 visits to his safe-deposit box. Six of these visits were on the same days on which he made $1,483.25 of contested deposits. Four of these visits were made within 1 week prior to his making 5 contested deposits totaling $1,106.50. The three additional contested deposits made during 1947 were: January 2 $200
January 27
950
April 9
250 Petitioner cashed two checks totaling $3,808.57 on November 8, 1946, and drew a $200 check payable to himself on his Amalgamated account on December 28, 1946. He made no visits to his safe-deposit box between November 2, 1946 and March 24, 1947. Petitioner made frequent visits to his safe-deposit box in 1945. During 1945, petitioner received a total of $11,295 as repayment of loans made *64 to various people. Amalgamated had destroyed its record of petitioner's 1945 visits to his safe-deposit box prior to the hearing herein. During 1945, petitioner deposited with two brokerage firms $13,500 and $9,620, of which amounts respondent contends that $12,700 and $9,620, respectively, represent unexplained deposits. Petitioner was born in Greece and came to the United States with his parents in 1920 at the age of 15. He later became a citizen of the United States. Petitioner attended the public schools of the City of New York for a year and a half, completing the seventh grade. In 1922, petitioner began the business operations of a pushcart vendor, selling fruits in New York City, and continued this enterprise until 1927 when he opened a stand in New York City to sell frankfurters and soft drinks. At Christmas and Easter, petitioner opened a curb stand for the sale of dolls, toys and flowers. The operation of the frankfurter stand, as well as the curb stand, was discontinued in 1938. He conducted all of these businesses on the cash basis. Sometime during the period 1938 to 1940 petitioner and Louis Graff formed a corporation, Milk Ranch, Inc., each holding an equal portion *65 of all the shares. The corporation operated a stand for the sale of soft drinks, ice cream and candy in New York City. Petitioner provided the sole support of his mother and father during the years 1924 through 1947. By 1944, petitioner had accumulated approximately $35,000 in his safe-deposit box. During the years 1945, 1946 and 1947, petitioner and Graff owned in equal shares and operated two milk bars, Milk Gardens, Inc., and Milk Ranch, Inc., in the City of New York. Petitioner and Graff also operated a partnership (Saffan Foods) in New York City for the fiscal years beginning April 1, 1944 and ending March 3, 1945; April 1, 1945 ending March 31, 1946; and April 1, 1946 ending March 31, 1947. Accurate records were kept for these businesses. In addition, petitioner and Graff owned a leasehold in the corporate name of Coffee Cola, Inc., located in New York City. Petitioner was also the sole stockholder of 251 Lexington Avenue Corp., a real estate corporation organized in 1946, which owned the building at that address in New York City. He also owned individually a parcel of realty at 105 Riverside Drive, henceforth called Riverside, which was purchased on April 21, 1947 and sold *66 December 1, 1947. During the calendar years 1945, 1946 and 1947, petitioner was employed as a salaried officer of Milk Ranch, Inc., Milk Gardens, Inc., and Coffee Cola, Inc. Petitioner purchased United States Government Series E bonds in 1942 and 1943 with a total face value of $25 and $350, respectively, and United States Government Series E and G bonds in 1944 and 1945 with a total face value of $4,600 and $7,550, respectively. All of these bonds were redeemed in the latter part of 1945. During the calendar years 1944 and 1945, petitioner purchased corporate shares in the amount of $20,801.20 and $219,270.80, respectively. During the calendar year 1945, petitioner sold corporate shares in the amount of $149,810.99. During the calendar year 1946, petitioner borrowed $18,000 from the Fiduciary Trust Company. During the calendar years 1945, 1946 and 1947, petitioner kept no books of account. The method of accounting employed by petitioner during those years did not clearly reflect income. Petitioner reported the following profit or (loss) from various sources for the calendar years 1945, 1946 and 1947: 1945
1946
1947
Salary
$ 4,500.00
$ 4,161.27
$7,674.92
Dividends and interest
3,150.00
1,759.04
458.66
Income from partnership
567.76
304.64
115.70
Net short-term capital gain
11,882.99
(16,249.57)
(9,488.56)
Net long-term capital gain
* 14,651.35
* 8,179.90
(2,963.55)
Rents
(862.67)
Adjusted gross income
27,426.43
5,224.95
6,386.61
*67 Petitioner had no sources of income other than those reported on his returns. The contested deposits do not represent unreported taxable income. During 1945, 1946 and 1947, petitioner used his automobile to deliver goods from the location of his partnership (Saffan Foods) to Milk Gardens, Inc., and Milk Ranch, Inc. Other times it would be used to make deliveries from supply houses to Milk Gardens, Inc. Petitioner's automobile was not used in his trade or business. Interest of $230.35 accrued in 1947 on petitioner's loan from the Fiduciary Trust Company but was paid until 1948. By amended petition, petitioner contends that he was on the accrual basis in 1947 and therefore entitled to the interest deduction in that year. Petitioner paid $429 and $511.70 on April 28, 1947 and October 31, 1947, respectively, for real estate taxes on Riverside. On his 1947 income tax return petitioner claimed a deduction in the amount of $364.83 for real estate taxes paid during that year on Riverside which respondent allowed. Respondent allowed an additional deduction of $228.43 in the statutory notice of deficiency making a total of $593.26. *68 Petitioner contends in his amended petition that a further deduction of $357.44 should be allowed. Some part of each deficiency in petitioner's income tax was due to negligence. Opinion Although respondent's privilege of resorting to the "bank deposit" method of reconstructing income cannot be doubted in the absence of proper accounting records, Louis Halle, 7 T.C. 245, affd. (C.A. 2) 175 F. 2d 500, certiorari denied 338 U.S. 949, the disadvantages of that approach are clearly illustrated here. Unlike the net worth method, for example, Holland v. United States, 348 U.S. 121, this determination tends to place a screen around the taxpayer's assets. In this case, as an instance, practically no credit is allowed petitioner for transfers between bank and brokerage accounts, yet their existence involving many dozens of items cannot be denied. What a net worth computation of petitioner's income would show is of course problematical, but we cannot escape the suspicion that in such a case, where the taxpayer possesses numerous assets, it would much more clearly reflect the true situation than the present determination. Petitioner *69 had several income-producing activities, in all of which, apparently, adequate records were kept, which accord with his tax returns. He categorically denies any other source of income and none has been seriously suggested. [1] A more convincing case for respondent would involve at least some intimation of the activities supposed to give rise to the hidden resources. Cf., e.g., Denny York, 24 T.C. 742; E. M. Green, 11 B.T.A. 185; Gleckman v. United States (a criminal case), (C.A. 8) 80 Fed. (2d) 394, certiorari denied 297 U.S. 709. In one of the returns involved, petitioner did in fact report an unusually prosperous year. This obviously, as well as the following lean ones, had some genesis in his stock market activities, for all of which there are records. He is admitted to have made several loans and investments which came back to him in the instant period, and his claim to a cash accumulation in a safe deposit cannot under the circumstances be dismissed as incredible. On the whole case, the only effective consideration is the numerous bank and brokerage deposits. In the light of petitioner's explanation, that by itself does not suffice. *70 See Goe v. Commissioner, (C.A. 3) 198 Fed. (2d) 851, affirming T.C. Memorandum Opinion [10 TCM 307,], certiorari denied 344 U.S. 897. As to the principal controversy, we disapprove the deficiency. Three small items of deductions may be dismissed summarily. Petitioner has not shown that his car was used in his own business, as contrasted with that of his corporations. The same is true of his claimed "entertainment" expense. Jacob M. Kaplan, 21 T.C. 134. Since proof is lacking of any deductible item, application is not warranted of the classic rule of Cohan v. Commissioner, (C.A. 2) 39 Fed. (2d) 540. Petitioner has not shown that he was on the accrual basis. In fact, he kept no personal books at all. Interest which became due in 1947 but was not paid until 1948 is hence not deductible in the former year. See Consolidated Asphalt Co., 1 B.T.A. 79, 82. And the excess real estate taxes he claims to have paid were apparently *71 for the current year and, therefore, under New York law, a lien on the property after April 1, and when purchased by petitioner, on April 21. Adda, Inc., 9 T.C. 199, affd. (C.A. 2) 171 Fed. (2d) 367. See Messer Oil Corp., 28 T.C. - (August 30, 1957). They are hence not deductible as petitioner's taxes. Perhaps the most difficult question is the negligence "penalty." The amount will be paltry, and except in principle could probably be dismissed as "de minimis." We think, however, that with all his financial interests petitioner should have kept some records of his own; and that if he had done so, at least some part of some of the items, such as automobile expense, and possibly entertainment, would not have arisen as an issue. We conclude that a part of the deficiency for each year is due to petitioner's negligence and that accordingly the addition to tax under section 293(a) may properly be collected. Decision will be entered under Rule 50. Footnotes
*. 50 per cent included in adjusted gross income.↩
1. The assertion that petitioner made money at the horse races is not only completely denied by him but seems improbable in the light of the amounts involved and other circumstances.↩