# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-00248-COA

**BBM VENTURES, LLC, BALLERY BULLY AND GRETA BULLY**                    APPELLANTS

**v.**

**HERB FRIERSON, IN HIS OFFICIAL CAPACITY AS THE COMMISSIONER OF REVENUE OF THE MISSISSIPPI DEPARTMENT OF REVENUE**                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 02/04/2021 |
| TRIAL JUDGE: | HON. J. DEWAYNE THOMAS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANTS: | JAMES GARY McGEE JR. |
| ATTORNEYS FOR APPELLEE: | MATTHEW TIMMONS HENRY KRISTEN NAJUANA BLANCHARD |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 08/30/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., GREENLEE AND LAWRENCE, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1.    Ballery and Greta Bully own or hold a majority interest in BBM Ventures LLC (BBM) and Bully's Restaurant.[1]  BBM is a Mississippi limited liability company formed in 2012, which does business as "Toast and Sip," a liquor and spirits retail store.  On September 2, 2014, the Mississippi Department of Revenue (MDOR) issued an "Audit Selection Letter"

---

[1] We will collectively refer to the Appellants—BBM and the Bullys—as "the Taxpayers."  The Bullys also have ownership in other businesses not relevant to this appeal.

to BBM (account no. 1277-9598), stating the department's intention to conduct a sales and special tax audit; use tax audit; and a withholding tax audit, and requesting records from January 1, 2012, through the current period.[2] The primary contacts during the audit were Greta and the Taxpayers' bookkeeper, Pat Williams. The MDOR also sent an audit notice to Ballery and Greta on October 3, 2014, indicating its intention to conduct an individual income tax audit, as well as a sales tax audit, a use tax audit; and a withholding tax audit for Bully's Restaurant (account no. 1285-3707). The letter requested records from January 1, 2011, through the current period.

¶2.    On August 21, 2015, a notice of assessment for sales tax liabilities was issued to BBM in the amount of $14,407, inclusive of penalties and interest. On August 24, 2015, the MDOR issued a notice of assessment for individual income tax liabilities against Ballery and Greta in the amount of $32,600, which included a seventy-five percent penalty for fraudulent underreporting of income. *See* Miss. Code Ann. § 27-7-105 (Rev. 2017). Also on August 24, 2015, a separate assessment for sales tax liabilities related to Bully's Restaurant was issued to Ballery in the amount of $76,591.

¶3.    On October 20, 2015, the Taxpayers appealed the BBM sales tax assessment and the Bullys' individual income tax assessment to the MDOR's Board of Review.[3] The Board of Review upheld and affirmed both assessments against the Taxpayers on August 9, 2016.

---

[2] Because BBM did not commence operations until August 2012, the audit period was actually from July 1, 2012, through July 31, 2014.

[3] The Taxpayers' failure to appeal the assessment for Bully's Restaurant will be addressed in part I of this opinion. *See infra* ¶¶12-15.

Aggrieved, the Taxpayers appealed to the Mississippi Board of Tax Appeals (BTA). A hearing was held before the BTA on March 22, 2017, and the BTA granted the Taxpayers additional time to produce documentation to support their appeals. After reviewing the supplemental documentation, the MDOR reduced the sales tax assessment against BBM to $10,803; the individual income tax assessment against the Bullys was also reduced to $13,180.81. On May 16, 2017, the BTA entered separate orders affirming the amended assessments.

¶4. The Taxpayers filed a petition with the Hinds County Chancery Court on July 13, 2017, challenging the BTA's findings. Specifically, they asserted that (1) the sales tax assessment was based upon a 30.78% markup of 100% of BBM's inventory; (2) the individual income tax assessment was "arbitrary and completely unreasonable"; and (3) the MDOR unjustly assessed the fraud penalty to the individual income tax assessment. The MDOR denied that the Taxpayers were entitled to any relief.

¶5. The Taxpayers filed a motion for summary judgment on May 15, 2018. Opposing the motion, the MDOR "submit[ted] that the sales tax assessment against BBM [was] *prima facie* correct" and that "the current sales tax assessment against BBM, as affirmed by the BTA, [did] not utilize a markup percentage analysis" but rather was "based on BBM's point of sale records." The MDOR also averred that the sales tax assessment did not contain any unsold inventory. Lastly, the MDOR asserted that the Bullys had "wholly failed to provide documentation to substantiate their claimed expenses" and that the fraud penalty was supported by the evidence. After a hearing, the chancery court denied the summary judgment

3

motion on July 16, 2019, finding there were "genuine issues of material fact in this cause that m[ight] result in 'triable issues.'"

¶6. A trial was held on January 13-14, 2020. Both parties submitted proposed findings of fact and conclusions of law to the court by February 28, 2020. The MDOR additionally submitted a response to the Taxpayers' proposed findings of fact and conclusions of law on March 20, 2020.

¶7. Despite these court filings, the chancery court clerk filed a motion to dismiss for want of prosecution on October 6, 2020, which stated that there had been "no action of record in said case during the preceding twelve (12) months." The attorney for the Taxpayers brought this motion to the court administrator's attention, believing it was a clerical error. The Taxpayers filed a motion for reconsideration on November 18, 2020, in response to an order of dismissal without prejudice entered by the chancery court on November 9, 2020. However, this order of dismissal is not in the record, nor is it listed on the chancery court's docket. Mississippi Rule of Civil Procedure 58 provides that "[a] judgment shall be effective only when entered as provided in [Mississippi Rule of Civil Procedure] 79(a)." Rule 79(a) requires "all . . . orders, verdicts, and judgments shall be noted in this general docket on the page assigned to the action and shall be marked with its file number. . . . The entry of an order or judgment shall show the date the entry is made. In the event a formal order is entered, the clerk shall insert the order in the file of the case."

¶8. On February 4, 2021, the chancery court entered a final judgment on the merits. The court noted that although the MDOR's initial audit "did, in fact, utilize a marked up

4

percentage on all inventory due to a lack of adequate records," the MDOR had "reconsidered its audit methodology and based the amended assessment solely on the point of sales records" once the Taxpayers provided the additional documentation after the BTA hearing. The chancery court affirmed the BTA's findings and dismissed the Taxpayer's petition with prejudice.

¶9. The Taxpayers appeal from the judgment, claiming that (1) Ballery was never "properly noticed or afforded his appeal rights" with regard to the tax assessments for Bully's Restaurant; (2) the sales tax assessment for BBM was "flawed," as it failed to take into account inventory that was for personal use or donated; (3) the MDOR failed to review the "voluminous amounts" of business records provided by the Bullys thereby overstating their taxable income; and (4) there was insufficient evidence at trial to support the seventy-five-percent fraud penalty imposed on the Bullys' individual income tax assessment. Finding no error, we affirm.

## STANDARDS OF REVIEW

¶10. Mississippi Code Annotated section 27-77-7(5) (Rev. 2017) establishes a chancery court's standard of review of the MDOR's and BTA's decisions:

> [T]he chancery court shall give no deference to the decision of the [BTA], the Board of Review or the [MDOR], but <u>shall give deference to the department's interpretation and application of the statutes as reflected in duly enacted regulations and other officially adopted publications.</u>[4] The chancery court shall try the case de novo and conduct a full evidentiary judicial hearing on all factual and legal issues raised by the taxpayer which address the substantive or procedural propriety of the actions of the Department of Revenue being

---

[4] This underlined portion has since been held unconstitutional by *HWCC-Tunica Inc. v. Mississippi Department of Revenue*, 296 So. 3d 668, 677 (¶37) (Miss. 2020).

5

appealed. The chancery court is expressly prohibited from trying any action filed pursuant to this section using the more limited standard of review specified for appeals in [s]ection 27-77-13 of this chapter. Based on the evidence presented at trial, the chancery court shall determine whether the party bringing the appeal has proven by a preponderance of the evidence or a higher standard if required by the issues raised, that he is entitled to any or all of the relief he has requested.

Further, "issues related to tax appeals are questions of law, which are reviewed by [our appellate courts] de novo." *Miss. Dep't of Rev. v. Comcast of Ga./Va. Inc.*, 300 So. 3d 532, 535 (¶12) (Miss. 2020).

¶11. Nevertheless, because the issues raised by the Taxpayers challenge the chancery court's findings of fact, not the court's interpretation of the law, "we apply a limited standard of review in that the factual findings of the chancery court, if supported by substantial evidence, will not be disturbed unless the chancery court abused its discretion, applied an erroneous legal standard, or its findings are manifestly wrong or clearly erroneous." *Rucker v. Miss. Dep't of Rev.*, 281 So. 3d 253, 254 (¶6) (Miss. Ct. App. 2019) (quoting *In re Estate of Smith v. Boolos*, 204 So. 3d 291, 305 (¶22) (Miss. 2016)).

**DISCUSSION**

I.    **Whether the chancery court erred in ruling that the Taxpayers failed to appeal the sales tax assessment against Bully's Restaurant.**

¶12. On October 30, 2014, the MDOR sent an "Audit Closing Notice" addressed to Ballery for account number 1285-3707, the account for Bully's Restaurant. Greta signed this document, indicating she was "in disagreement with the audit findings." A notice of assessment dated August 24, 2015, was subsequently issued to Ballery in the amount of

6

$76,591 related to Bully's Restaurant.[5]

¶13.    Mississippi Code Annotated section 27-77-5(1) states that a taxpayer has sixty days "from the date the agency mailed or delivered written notice of the action" to appeal a tax assessment. Because the Taxpayers did not appeal this assessment, the chancery court noted in its final order that they had failed to appeal those tax assessments against Bully's Restaurant.

¶14.    The Taxpayers do not dispute that they failed to file an appeal of the assessment. Rather, they argue that the chancery court's ruling was in error because there was no evidence to show that the MDOR had "mailed or delivered" the notice of assessment to them. Although Greta admitted that she signed the audit closing notice, she emphatically claimed at trial that neither she nor her husband Ballery received the subsequent notice of assessment for Bully's Restaurant. The Taxpayers contend that "Mississippi law clearly provides that MDOR must provide sufficient record evidence that a notice was in fact mailed to a taxpayer; simply providing a copy of the notice in question is insufficient." However, they cite no authority for this assertion.

¶15.    Furthermore, when asked if the notice of assessment was sent to Ballery, the MDOR auditing supervisor Curtis Covington replied, "Mr. Bully, yes. This letter is generated when the audit is finally approved and it's mailed out. . . . [T]*his letter doesn't exist without it going into the mail.*" (Emphasis added). Covington later testified:

> Again, the system that we use when the audit is approved and this letter is generated, generally this letter is generated and mailed out that night, but I'm

---

[5] This notice referenced the same account number.

not the one that sticks that in the mail. It's automatically done for every audit assessment letter that's mailed.

. . . .

And the fact that [the letter] is [in the system] tells me that it got mailed.

We find that the copy of the notice of assessment and Covington's testimony constituted substantial evidence for the chancery court, the fact-finder, to conclude that the MDOR mailed the notice and the Bullys failed to appeal the assessment as required by section 27-77-5(1).

> **II. Whether the chancery court erred in affirming the sales tax assessment against BBM because the MDOR did not properly account for personal use and donations of inventory.**

¶16. The chancery court determined that the MDOR's sales tax assessment against BBM relied "solely upon . . . BBM's actual sales records in the provided point of sales [(POS)] records . . . and . . . that the same is proper and correct." The Taxpayers acknowledge that the amended sales tax assessment for BBM "was based on the Taxpayers' [POS] reports." They argue, however, that the POS reports failed to account "for personal use and donations of inventory."

¶17. Greta explained at trial, "Items that we use for personal use, we didn't have to pay sales tax on it because we've already previously prepaid taxes, so that . . . was like a fringe benefit of owning a liquor store." When asked why there was a $6,000 discrepancy between the POS records and BBM's "Detailed Daily Report" for December 2012, Greta said that it was because one of BBM's former partners[6] had given "out liquor for Christmas gifts." She

---

[6] This partner died in 2014, and the business is now a sole proprietorship.

8

further testified:

> I gave items away as well as Christmas gifts. And I think we had in our documents where we sponsored a couple of community events that we donated liquors that you all did not give me credit for. That was in the paperwork, and it was stated "Given away for Christmas events," so we documented the reason why we subtracted it out of the sales.

Greta admitted, however, that this particular inventory was rung through the POS system in order to take it out of inventory.

¶18. Although the Taxpayers assert that this evidence was "contemporaneously documented and subsequently provided to MDOR," the only cited reference in their brief is to Greta's testimony, not to any specific documentation. Moreover, when asked if this was an "accurate way of reporting sales tax and taking credits," MDOR auditing supervisor Curtis Covington testified:

> No. You usually -- this shows whatever has been rung up in the [POS] system, at the cash register, and what you would normally do is you ring it up at the whatever price you're going to ring it up at, as the cost or whatever, and that would be included in the net sales. You report the total net sale this shows, and then you would still take the credit on the sales tax return for the tax you paid on the liquor when you bought it from ABC.

Covington added that he had seen no evidence or documentation that BBM was taking credits or donating inventory.

¶19. As this Court recently recognized, "[t]he auditor is not required to use 'the best information available' to make an assessment; 'in order for the assessments to be prima facie correct, the auditor must make them from any information available.'" *Jackson Land Food Mart Inc. v. Frierson*, 314 So. 3d 146, 151 (¶28) (Miss. Ct. App. 2021) (quoting *United Roofing & Constr. of MS Inc. v. Miss. Dep't of Revenue*, 319 So. 3d 1164, 1173 (¶25) (Miss.

9

Ct. App. 2020)). "Once the auditor's assessment is made and the presumption of prima facie correctness attaches, 'the taxpayer bears the burden of proof showing that a genuine dispute exists regarding the correctness of the assessment.'" *Id*.

¶20. The only record evidence at trial of these donations or personal use of inventory was Greta's own testimony. In *Marx v. Bounds*, 528 So. 2d 822, 827 (Miss. 1988), the Mississippi Supreme Court found that a taxpayer's "own undocumented recollection," which was "uncorroborated[,] . . . does not fulfill the taxpayer's burden of proof" to overcome the prima facie presumption of correctness of the tax assessment. Because the Taxpayers have not corroborated Greta's testimony regarding the donated items and gifts, we find no error in the chancery court's determination that the MDOR's calculation of the sales tax assessment was "proper and correct."

> **III. Whether the chancery court erred in finding that the Taxpayers failed to produce source documentation for the majority of their business expenses and in affirming the individual income-tax assessment.**

¶21. In its order addressing the individual income-tax assessment against the Bullys, the BTA noted that the "[r]eported expenses . . . reviewed and sampled" by the MDOR "could not be substantiated." Furthermore, the "spreadsheet that summarized expenses . . . provided little to no source documentation to verify the expenses." The BTA concluded:

> During the hearing and in their submissions, the taxpayers made general allegations of why the [MDOR's] assessment was incorrect and provided us with copies of bank statements and various unverified schedules that had been previously submitted to the [MDOR], but the taxpayers provided absolutely nothing to verify or *substantiate* their arguments or the documents and schedules presented. . . . Although we understand the [T]axpayers *believe* they are entitled to more deductions, it appears to this Board that the [MDOR]

10

allowed all of the expenses claimed by the taxpayer that are *both* allowable as deductions and for which the taxpayer provided documentation to properly substantiate their payment of those expenses.

Affirming the BTA's order, the chancery court likewise noted that "the self-prepared spreadsheet of [the Taxpayers'] business expenses lacked source documentation" and that the Taxpayers "failed to provide any receipts, cancelled checks, or any other source of documentation [at trial] to support the vast majority of expenses sought as deductions that were denied by MDOR."

¶22. The Taxpayers, however, contend that they provided the source documents necessary to substantiate the business expenses deducted on their individual income-tax returns but the auditor "failed to review all documents" and, instead, "arbitrarily sampled the documents produced and decided they were inadequate." Thus, the Taxpayers argue that the chancery court erred in affirming the amended individual income-tax assessment.

¶23. Greta testified that after she received the notice of the audit, she contacted the MDOR auditor, Lee Pittman, and "gave him full access to the POS system . . . [and] inventory."[7] She further claimed:

> I gave them everything that I thought they needed and more. I gave them everything I had access to. I opened my doors; I opened my books. I gave them tons of documents that is illustrated in the picture. In fact, it was so much documents, the auditors [were] overwhelmed.
>
> . . . .

---

[7] Responding to Greta's testimony that she had provided access to those reports, Covington explained that the auditors "need to have someone that has the authority to pull those reports for us out of the system." However, the MDOR's access to the POS reports for BBM is not relevant to the issue of the documentation for the individual income-tax assessment.

I was never informed that the records were inadequate.

Greta repeatedly asserted that she "gave [the auditors] everything."

¶24. Covington disputed Greta's testimony, stating that the Taxpayers did not provide all

the documents requested during the audit. He testified:

> Some of the records that were not provided are not all the bank statements were provided; the records detailing asset valuation were not provided; inventory records, total inventory records were not provided. There was one year of Mississippi income tax returns that were not provided. . . . Payroll records were not provided; no profit and loss statement was provided, balance sheets; general ledger was not provided.

Covington noted that it was not until after the BTA hearing that the Taxpayers provided

"additional records," all of which had been requested both prior to and during the audit. The

MDOR amended the assessments once those additional documents were reviewed. Pittman,

the auditor, also averred in his affidavit "[t]hat the Taxpayers provided only a portion of the

necessary records request[ed], including copies of bank statements, federal and state income

tax returns, and sales tax returns for the audit period" and "failed to provide adequate

documentation to support nearly all of the numerous claimed expenses which were

disallowed by the MDOR."

¶25. The auditor's comments summary further stated:

> The taxpayer provided copies of income tax returns for the tax years 2011-2012. A request was made for the 2013 return. Ms. Williams stated that the 2013 return has not been prepared. The 2013 return was prepared and filed during the audit process. The taxpayer failed to provide substantiation for the majority of deductions claimed on the returns.

Although Greta later provided spreadsheets detailing expenses, Covington testified that "only

about five to eight percent of the expenses could be substantiated for all the businesses put

12

together." Covington also stated "that the taxpayer was less than cooperative throughout the process," noting there had been several scheduled meetings where the "taxpayer's representative did not show up."[8]

¶26. The supreme court has held: "Deductions on an income tax return are not a matter of right; they are a statutory grant, which must be provided clearly under the statute. . . . The taxpayer has the burden of proving that the facts bring the case squarely within the deduction provisions of the statute." *Purcell Co. v. Miss. State Tax Comm'n*, 569 So. 2d 297, 301 (Miss. 1990) (citing *State v. L. & A. Contracting Co.*, 241 Miss. 783, 792, 133 So. 2d 546, 549 (1961)). Reviewing this testimony and the record, we find the Taxpayers failed to demonstrate that the chancery court's ruling was not supported by substantial evidence or was manifest error.

### IV. Whether there was sufficient evidence to support the fraud penalty assessed in conjunction with the individual income-tax assessment against the Bullys.

¶27. Affirming the individual income-tax assessment against the Bullys, the BTA further determined that "the fraud penalty imposed under Miss[issippi] Code Ann[otated section] 27-7-105 [was] appropriate." Mississippi Code Annotated section 27-7-105(1) (Rev. 2017) provides, "If any part of any underpayment of tax required to be shown on a return required by this chapter or if any underpayment is finally assessed due to failure to file a return required by this chapter is due to fraud, there shall be added to the tax an amount equal to

---

[8] On cross-examination, Covington clarified that the Taxpayers' level of cooperation was not a factor in assessing the fraud penalty, which will be discussed in part IV of this opinion. *See infra* ¶¶27-32.

13

seventy-five percent (75%) of the portion of the underpayment which is attributable to fraud."

¶28.    The BTA also cited to 26 U.S.C. § 6663 ("Imposition of fraud penalty") and federal case law that outlines several indicia or "badges of fraud." *See Niedringhaus v. Comm'r*, 9 T.C. 202, 211 (1992). These include:

> (1) Understatement of income; (2) inadequate records; (3) failure to file tax returns; (4) implausible or inconsistent explanations of behavior; (5) concealment of assets; (6) failure to cooperate with tax authorities; (7) filing false W-4's; (8) failure to make estimated tax payments; (9) dealing in cash; (10) engaging in illegal activity; and (11) attempting to conceal illegal activity.

*Niedringhaus*, 9 T.C. at 211 (citing *Bradford v. Comm'r*, 796 F.2d 303, 307 (9th Cir. 1986)).

The BTA concluded that the MDOR had presented the following facts by "clear and convincing evidence":

> (1) the taxpayers under-reported income; (2) the gross overstatement of approximately $750,000.00 of claimed expenses by the taxpayers that were unsupported by their records; (3) there was a consistent pattern of underreporting taxable income over all three years of the audit; (4) failure of the taxpayers to maintain adequate records; and (5) the taxpayers' failure to disclose several bank accounts that the [MDOR] discovered while reviewing the taxpayers' supplemental records.

The chancery court upheld the BTA's finding, noting:

> The evidence at trial clearly demonstrated more than a misunderstanding of appropriate deductions or a less than ideal system of record keeping. Instead, the testimony and exhibits clearly showed that [Taxpayers] substantially understated income for a period of at least the three (3) years of the audit. . . . The evidence further demonstrated that [Taxpayers] failed to maintain adequate records[,]. . . [and] wilfully withheld relevant documentation throughout the course of the audit until during the actual hearing before the BTA. Finally, [the Taxpayers] failed to file a return in 2011.

The Taxpayers appeal the court's ruling, arguing that the MDOR's belief that "the records

14

produced were insufficient . . . does not indicate any fraudulent intent on behalf of the Taxpayers."

¶29.    According to the auditor's affidavit, the MDOR applied the seventy-five-percent penalty due to "the Taxpayers' pattern of substantially understating income while also grossly overinflating their expenses in order to lower their tax liabilities." Specifically, he noted that there was a variance of 286% between the net income reported by the Taxpayers compared to the net income verified by the audit. The Taxpayers claim that their income was actually "overstated . . . for much of the audit period" and that the "alleged variance stems from business deductions improperly disallowed by the MDOR." We already have determined that argument is without merit. *See supra* ¶¶21-26.

¶30.    Furthermore, as Covington explained at trial, the fraud penalty was imposed because (1) not all three years of tax returns had been filed when the audit began; (2) documentation was not provided to substantiate costs of goods sold and expenses; and (3) several categories of expenses were not "ordinary and necessary to those types of businesses, and . . . were very large in nature and could not be substantiated." As noted in the BTA's order, the Bullys "derived their primary source of income from their operation of Bully's Restaurant and BBM[.]" The auditor's worksheets indeed reflect that there were several expenses for the Bully's Restaurant and BBM that could not be substantiated through the audit. For example, the Taxpayers' reported "Car and Truck Expenses" for Bully's Restaurant was over $100,000 in 2012 and $65,671 in 2013; neither expense was substantiated in the audit. Covington also noted that although the Taxpayers reported $86,425 in supplies for Bully's Restaurant in

15

2012, only $8,622.57 "could be substantiated[.]" Additionally, the individual income audit's work papers show that the Taxpayers claimed $750,825 of combined expenses for BBM for 2012 and 2013, yet only $49,528.63 (7%) of the claimed expenses were verified by the audit.[9] When asked whether that was "an unusually high amount of expenses claimed that couldn't be substantiated," Covington replied, "Yes. It's very high."

¶31. Lastly, the MDOR's audit worksheets clearly indicated that the Bullys had underreported their income from 2011 to 2013. Covington explained at trial:

> So on this sheet, we've looked at all three years, the total taxable income for both individuals, and the next tab is just 2011, and so what this shows is Mr. Bully, on the 2011 return, as prepared, he reported a loss of $1,290. We found additional income of $112,000, so an adjustment was made. Net taxable income was made of $113,000. Mrs. Bully had no taxable income reported or audited in 2011. . . . 2012 is the next tab, and so on the return filed for 2012, Mr. Bully reported a loss of $521. The audit findings resulted in taxable income of $228,000. Mrs. Bully reported a loss of $389,000. On the 2012 return[,] the audit findings show that she had a loss of $58,000, so an adjustment was made through the audit.
>
> . . . .
>
> This is 2013 for Mr. Bully and Mrs. Bully. Mr. Bully reported a loss of $138,000 on the 2013 return. The audit findings show that he had taxable income of $126,000, a $265,000 adjustment for just 2013. Mrs. Bully reported a loss of $386,000. . . . So Mrs. Bully reported a loss of $386,000 in 2013. She reported a loss in [20]12, also reported a large loss in 2013. The audit findings show that she had taxable income that year of $93,000.

We therefore find no error in the chancery court's determination that they "substantially understated income for a period of at least the three (3) years of the audit."

---

[9] The following are examples of the expenses for BBM that could not be substantiated: $258,798 reported for "Taxes and Licenses in 2012 and 2013," $83,962 for "Car & Truck Expenses" in 2012, and $50,000 for "Advertising" in 2012 (only $1,600 was substantiated).

¶32. Section 27-77-7 provides that "[t]he chancery court shall decide all factual and legal questions presented, including those as to legality and the amount of tax, refund, tax credit or tax incentive due *as well as whether and to what extent the imposition of interest and/or penalties are warranted under the facts of the case*[.]" (Emphasis added). In this case, we conclude that the Taxpayers have failed to demonstrate that the court committed manifest error in affirming the imposition of the fraud penalty.

¶33. Accordingly, we affirm the chancery court's judgment.

¶34. **AFFIRMED.**

**WILSON, P.J., GREENLEE, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR. WESTBROOKS AND McDONALD, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION. CARLTON, P.J., AND McCARTY, J., NOT PARTICIPATING.**