STATE OF MISSISSIPPI et al. *v.* L. & A. CONTRACTING COMPANY

No. 41956 October 9, 1961 133 So. 2d 546

786

*John E. Stone,* Jackson, for appellants.

*Dudley W. Conner*, Hattiesburg, for appellee.

ETHRIDGE, J.

This case involves the validity of a state income tax deduction as an ordinary and necessary business expense or loss incurred in trade or business. A successor corporation, owned by the partners, assumed and paid a debt of the predecessor partnership, under a claimed necessity to obtain future financing from the creditor. We hold the payment is not a deductible expense or loss.

L. & A. Contracting Company (called L. & A.) is a corporation domiciled at Hattiesburg, Mississippi, and engaged in the business of contracting for highway construction. It filed its Mississippi income tax return for the fiscal year October 1, 1957, through September 30, 1958, which showed a gross income of $3,537,789.77. It reported a net taxable income of $10,141.92. Among expenses and deductions claimed was a "loss paid as endorser on notes" of $194,580.95. The State Tax Commission disallowed this deduction and rendered a deficiency assessment against the company for additional income tax of $12,415.82, exclusive of statutory interest. L. & A. appealed to the Chancery Court, First Judicial District of Hinds County, which set aside the additional assessment and allowed the deduction.

A review of the facts relative to payment of this note by the taxpayer is necessary to consider the issues. In 1947 O. L. Sims became engaged in business as a subcontractor for Fairchild Construction Company, as a division of W. R. Fairchild, contractor. Fairchild furnished the financing for Sims' subcontracting work, and Sims paid him a commission for that service. Apparently this arrangement worked satisfactorily for some time. However, Fairchild began to refer the work to other subcontractors and to his own organization. Around 1951 or 1952 O. L. Sims brought his sons, Harley and Ray,

into his business, as a partnership named O. L. Sims Construction Company. For several years Fairchild had advanced money to the Sims and the partnership to obtain equipment on lease-purchase agreements and to carry out various subcontracts, but Fairchild began to insist on Sims furnishing security for the financing, which Sims refused.

In November 1954 O. L. Sims and his two sons organized a corporation named L. & A. Contracting Company. At the first meeting of the board of directors of that corporation, the partnership conveyed to it property of the estimated value of $207,266.38, with debts against the same of $42,866.38. In return the corporation issued fully paid shares in the total amount of $164,400.00 as follows: to O. L. Sims, 822 shares or $82,200.00; to Ray Sims, 411 shares or $41,100.00; and to Harley Sims, 411 shares or $41,100.00. These men were the partners in O. L. Sims Construction Company. The partners conveyed to the corporation substantially all of the equipment of the partnership. O. L. Sims also transferred to the corporation certain real estate, for which he was issued an additional 820 shares.

On December 3, 1954, Fairchild wrote O. L. Sims stating that his debt to Fairchild totaled approximately $160,000 and Sims had refused to give security. Fairchild declined to extend further credit to him except on outstanding subcontracts. Sims replied, denying that Fairchild had previously required or requested security for advance financing. Shortly thereafter Sims borrowed from a Jackson bank $35,000 to assist in financing his operations. He also sought to borrow money through the Small Business Administration, but was unsuccessful in obtaining such loan.

On April 7, 1955, Fairchild wrote O. L. Sims insisting on a meeting to determine the exact amount of Sims' debt. He asserted that Sims had transferred to L. & A. assets of the Sims partnership, which allegedly were purchased with money furnished by Fairchild; and that

Fairchild had an equitable lien on this equipment transferred to L. & A. He sent copies of the letter to the SBA and the bank. In a reply letter Sims agreed to give Fairchild access to his books to determine the amount of the debt, but asserted the assets transferred by the partnership to L. & A. had not been purchased with any money advanced by Fairchild. He agreed to pay the debt owed Fairchild.

In May 1955 Fairchild filed a suit against the three Sims, partners, and L. & A., in the Chancery Court of Forrest County, claiming an equitable lien against the real property and the equipment transferred by the partnership to L. & A., on the ground that it was Fairchild's money which had purchased such equipment and improvements. In the meantime, the partnership continued to exist and perform certain subcontracts, although it had transferred substantially all of its equipment to L. & A.

On June 6, 1955, all of the parties got together on a contract of settlement of their differences. The contract was between L. & A., acting by its president, O. L. Sims, and the three Sims partners on the one hand (called Sims), and Fairchild as a limited partnership on the other. Sims, as president of the corporation and head of the partnership, agreed to complete present subcontracts and to liquidate the present debt due Fairchild. The contract stated the debt was approximately $205,000.00, but it was later determined to be $194,580.95. L. & A. and the partners agreed to and did give a first deed of trust on all equipment and property, to secure the debt, evidenced by notes. Fairchild agreed to advance $35,000.00 to Sims to pay off the bank loan, to finance Sims on subcontracts not exceeding the sum of $175,000.00 for a period of three years, and to dismiss the suit in the chancery court. The suit was dismissed without answer being filed. Sims would pay Fairchild for the financing service a commission of two and one-half per cent of the total contract price of each job.

Pursuant to this agreement, L. & A. by its president, O. L. Sims, executed notes to Fairchild in the total amount of $194,580.95. On August 1, 1958, these notes were paid in full by the taxpayer, L. & A. Contracting Company. In March 1958 Fairchild demanded payment and threatened to foreclose. As a result of this demand, L. & A. paid the debt.

O. L. Sims testified that Fairchild's action in sending copies of his letter to the bank and the SBA made it impossible for him to get any further financing. It put him "out of business", because he could not get any financing. L. & A. used some money which it had earned on business not financed by Fairchild to pay part of the debt.

Emerson, an accountant for taxpayer, said he considered the notes as a business expense of the corporation, which was necessary for it to stay in business and to secure financing; that if it had not paid the note, Fairchild would have withdrawn his financial support. The partnership continued to operate through 1957, and some of its earnings, $96,000.00, were paid to Fairchild by the partnership in partial discharge of the debt. The partners owned all of the stock in L. & A. except two shares. Emerson admitted that, at the time of the settlement contract in June 1955, the partnership alone owed Fairchild the sum asserted to be deductible by the corporation. The only indebtedness actually assumed by L. & A. at the time of the transfer of the equipment to it was the $42,000 of liens; no mention was made of the $194,580.95 debt. L. & A. was the maker of the notes, not the endorser. In short, the debt for which Fairchild made the demand was the debt of the partnership. It did not become that of L. & A. until after the corporation through the partners who were controlling stockholders signed the notes for L. & A. Prior thereto L. & A. owed Fairchild nothing.

The taxpayer asserts that its payment of this note is deductible from its gross income, under Miss. Code 1942, Rec., Sec. 9220-09, for two reasons, as follows:

"In computing the net income, there shall be allowed as deductions:

"(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, . . . .

"(4) Losses sustained during the taxable year not compensated for by insurance or otherwise, if incurred in trade or business, or transactions entered into for profit. . . ."

■■■ In pari materia is the next section, Sec. 9220-10, entitled "Items not deductible", as follows:

"In computing net income, no deductions shall, in any case, be allowed in respect of: . . . . .

"(7) Losses sustained or realized from transactions between . . . corporation and individual where the individual owns five per centum (5%) or more of the stock of the corporation."

It is argued that, although the debt to Fairchild was not originally the debt of the corporation, it was essential that L. & A. through its stockholders who were also members of the debtor-partnership, execute notes to Fairchild in order to protect it's credit and to assure it of a method of financing its operations in the future; and that the payment by the corporation of this debt was an ordinary and necessary business expense.

■■■ Deductions from income are not matters of right, but represent statutory grants. ■■■ The burden is upon the taxpayer to prove that the facts bring the case squarely within the deduction provisions of the statute. Tupelo Garment Co. v. State Tax Commission, 178 Miss. 730, 746, 173 So. 656 (1937). ■■■ The allowance of deductions from gross income does not turn on general equitable considerations. A deduction will be allowed only where clearly provided for under the statute. 4 Mertens, Law of Federal Income Taxation (1954), Sec. 25.03. ■■■ The issue is generally one of fact or a mixed question of law and fact.

■ ■ L. & A. assumed and paid this debt of the partnership. The two were separate legal entities. For an expense to be deductible as a business expense, it must be paid or incurred in connection with the carrying on of a trade or business of the taxpayer. Conversely, if the expense is incurred and paid by the taxpayer in connection with the carrying on of someone else's business, as here, such expense is not deductible, even though the taxpayer receives benefit from incurring such an expense. 4 Mertens, Ibid., Sec. 25.12. The authorities discussed in the cited text recognize that it is only "in exceptional cases" where the separate entities will be disregarded. This case does not fall within that category, for several reasons.

■ ■ What is "necessary" defies an all-inclusive definition. Although each case must be determined on its peculiar facts, certain basic principles are valuable guides. Ordinarily, an expense will be considered "necessary" if the expenditure is appropriate and helpful in developing and maintaining the taxpayer's business.

■ ■ Considerable weight is given to the taxpayer's judgment. However, in the instant case one can question the necessity of the payment by the corporation of this substantial sum owed by the partnership.

■ ■ Of course the partners controlled the corporation, and, in one sense, the expenditures might have been appropriate and helpful in assisting L. & A. to obtain further financing from Fairchild. Other than Sims' statement that he could not get any further loans from other sources, there is no evidence to indicate the extent to which he sought to obtain additional financing from sources other than Fairchild. He did obtain a loan from a Jackson bank, and it is apparent that a well-operated contracting business can usually obtain financing in the money market. 4 Mertens, Ibid., Sec. 25.09. ■ ■ In brief, the Commission was justified in concluding, as it apparently did, that the settlement contract with Fairchild and assumption and payment of this large debt by

L. & A. was not a necessary business expense. That ruling has a presumption of correctness, with the burden upon appellee to prove it to be wrong.

Secondly, the expense was for the convenience of the corporation, but would hardly be classed as ordinary. Clearly the expense was that of another. In determining what is an ordinary expense, custom and practice in the business world usually furnish reliable guidance. It is affected by the time, place and circumstances of the particular expenditure, which does not have to be habitual and normal in terms of frequency. It may be "ordinary" in the sense that it is not unusual in the experience of the group or community of which taxpayer is a part. The distinction often is that of degree and not of kind.

■■ Assuredly the assumption by the corporation, under control of the partners, of a large debt such as this is not ordinary in the experience of a taxpayer such as appellee. No liability for the debt existed before the controlling partners decided to transfer it to their corporation. To be "ordinary and necessary" the expenditure must have some reasonably proximate relation to the customary conduct of the taxpayer's business. 4 Mertens, Ibid., Sec. 25.09. Moreover, it is generally held that a business expense must be paid in connection with the carrying on of the business of the taxpayer, not of someone else, even though the taxpayer might obtain some benefit from it. 4 Mertens, Ibid., Sec. 25.12. The administrative ruling that it was not ordinary was supported by substantial evidence, and accords with the foregoing principles.

Numerous cases support that conclusion. In Welch v. Helvering, 290 U. S. 111, 54 S. Ct. 8, 78 L. Ed. 213 (1933), the Court affirmed disallowance of the payment by a commission agent of the debt of a corporation in which he had been an officer, which was made in an endeavor to strengthen his own standing and credit. In White v. Commissioner, 61 F. 2d 726 (CCA 9th, 1932), White was a member of a partnership which incurred

certain debts. It was dissolved and he later became a partner with another. White was threatened with a law suit by creditors. In order to obviate that and further difficulties in his new business, the new partnership paid the debt. The deduction was disallowed. The payments were in settlement of the separate debt of White, and were not connected with and did not grow out of the business of the new firm. While it was "expedient" to protect the credit of the new partnership, the payments were held not to be ordinary expenses.

Applying the presumption of correctness to the Commission's ruling, the stated rule may also be said to be in accord with a sound reason and policy, because it takes cognizance of the danger of tax avoidance through shifts of deductions between related entities. L. & A.'s execution of the note and payment of the debt, so far as the partnership is concerned, are similar to a capital contribution to the partnership by a closely held corporation. Note, Deductibility of Expenses Incurred for the Benefit of Another, 66 Harv. L. Rev. 1508 (1953).

Thirdly, Sec. 9220-10, quoted above, describing items not deductible, specifically excludes losses sustained or realized from transactions between a corporation and an individual where the individual owns five per cent or more of the stock of the corporation. This transaction was not only between Fairchild and the corporation, but with the partners, who owned practically all of the stock of the corporation. They directed transfer of the debt, and controlled its payment by L. & A. See 47 C. J. S., Internal Revenue, Sec. 316.

■■ ■■ Nor was this a deductible loss incurred in a business entered into for profit. A successor corporation is not entitled to deduct the loss of a predecessor partnership. The notes were executed by the corporation and were paid voluntarily in settlement of the individual obligations of the partners, incurred prior to the time the corporation was organized. The loss was from a separate undertaking of the partners. 47 C. J. S., Internal Rev-

enue, Sec. 283. The payments cannot be said to be a loss to the corporation within the meaning of the statute. White v. Commissioner, 61 F. 2d at 729.

For these reasons, the chancery court erred in setting aside the Commission's order disallowing the claimed deduction. The decree is reversed, and the order of the Commission will be affirmed.

Reversed and judgment rendered affirming order of State Tax Commission.

*McGehee, C. J.,* and *Kyle, Arrington,* and *Rodgers, JJ.,* concur.