ABERFOYLE MANUFACTURING COMPANY v. IVEY L. CLAYTON, ACTING COMMISSIONER OF REVENUE.

(Filed 23 July, 1965.)

**1. Appeal and Error § 21—**

An assignment of error to the signing and entry of judgment presents for review whether the agreed statement of facts supports the judgment and whether error of law appears on the face of the judgment.

**2. Taxation § 28c—**

Provision for loss carry-over in computing income tax for a particular year is not required by the organic law but is solely a matter of grace, and such allowance must be determined in accordance with public policy as set forth in the statute permitting such loss carry-over. G.S. 105-147(9)(d).

**3. Same—**

Where a corporation realizes a gain from the liquidation of wholly-owned subsidiaries, such gain, even though not constituting taxable income, G.S. 105-144(c), does constitute income "from all sources including income not taxable" within the purview of G.S. 105-147(9)(d)(2), and consequently must be deducted from any asserted loss carry-over from a previous year.

APPEAL by plaintiff from *Riddle, S.J.,* 2 March 1964 non-jury Session of GASTON.

The complaint alleges two causes of action: (1) to recover an alleged overpayment of income tax in the amount of $2,423.44, with interest; and (2) to recover the sum of $12,596.04, with interest, for an alleged additional income tax assessed against it by the then Commissioner of Revenue, and paid under protest.

When the action came on to be heard before Judge Riddle, the parties presented to him an agreed written statement of facts, signed by counsel of record of both parties on 26 November 1963, which is as follows:

"The parties, by their respective counsel, do hereby stipulate and agree that the following statement of facts, in narrative form, is true and correct and that said statement includes all facts nec-essary to a determination of the issues raised by the pleadings.

"It is further stipulated and agreed that the cause may be heard by the Court sitting without a jury upon the facts contained in this statement.

## PRELIMINARY STATEMENT

"This case arises under Section 105-147 of the income tax article of the North Carolina Revenue Act. That section provides, in Sub-section (9) (d), for a net economic loss deduction. 'Net economic loss' is defined as the amount by which allowable deductions (with certain exceptions) 'exceed income from all sources in the year including any income not taxable under this article.' Net economic losses for any or all of the five preceding years may be carried for-ward and deducted in a current year but 'only to the extent that such carry-over loss . . . shall exceed any income not taxable under this article received in the same year in which the deduction is claimed, . . .' Any such loss carry-over is also required to be offset by 'any income taxable or non-taxable' of any intervening year.

## FACTS

"Plaintiff taxpayer is a Pennsylvania corporation which was domesticated in North Carolina in 1927 and which has its registered office in Ranlo, Gaston County. Plaintiff's business, at all times relevant to this action, was conducted and transacted partly within and partly without North Carolina.

"For plaintiff's tax years ended June 30, 1958-1961, the percent-ages of its net apportionable income which was allocable to North Carolina under G.S. 105-134 were as indicated below:

| | |
|---|---|
| 1958 | 29.4459% |
| 1959 | 35.0895% |
| 1960 | 41.3288% |
| 1961 | 65.0033% |

"During the three years ended June 30, 1958-1960, plaintiff's in-come tax deductions (other than those excepted by G.S. 105-147 (9) (d) (2)) exceeded its taxable income and thus produced operat-ing losses apportionable to North Carolina of $11,725.38, $123,-245.39 and $96,575.86, respectively, a total of $231,546.63.

"Prior to the close of business June 30, 1960, plaintiff owned 100 percent of the stock of Rex Mills, Incorporated, a North Carolina corporation, and 100 percent of the stock of Aberfoyle Manufacturing Company of Canada, Limited. The business activities of plaintiff and its two named subsidiaries constituted a unitary textile manufacturing business.

"During plaintiff's tax year ended June 30, 1960, it received from Rex Mills dividends in the amount of $97,730. Subsequently, during the same tax year plaintiff liquidated Rex Mills and the above-named Canadian subsidiary. Gain to plaintiff from the liquidation of these subsidiaries amounted to $4,120,418.65. This gain, under the provisions of G.S. 105-144(c), was not recognized.

"Plaintiff, for the year ended June 30, 1961, had a net income apportionable to North Carolina in the amount of $341,123.00.

"In computing its net economic loss carry-over deduction on its June 30, 1961, return, plaintiff reduced its loss carry-over by $40,-390.00. This was the amount by which plaintiff's net taxable income apportionable to North Carolina would have been increased for the year ended June 30, 1960, but for the dividends received deduction allowed by G.S. 105-147(7) with respect to the $97,-730.00 in dividends from Rex Mills. Plaintiff was entitled to deduct 100% of the dividends it received from Rex Mills in the year ended June 30, 1960, because for that year all of Rex Mills income was apportionable to and taxed by North Carolina. The $40,390.64 reduction brought the plaintiff's claimed net economic loss apportionable to this State down from $231,546.63 to $191,155.99. On its June 30, 1961, return, plaintiff claimed a loss carry-over deduction of $191,155.00. The Commissioner required that the economic losses incurred in the years ended June 30, 1958-1960 be further reduced by the gain on the liquidation of Rex Mills and the Canadian subsidiary and disallowed the deduction in its entirety.

"Plaintiff made timely application to the Commissioner for a refund of the tax attributable to the $40,390.64 dividend deduction item. Plaintiff averred that it had erred in reducing its carry-over loss deduction by said amount and in paying $2,423.44 in tax (6% x $40,390.64) on account of the reduction. The refund application was denied.

"Plaintiff also made timely protest to the proposed assessment of additional tax on account of the disallowance of the $191,155.00 net carry-over loss deduction as aforesaid. The assessment, in the amount of $11,469.30 plus $1,126.74 in interest, was sustained by the Commissioner and paid under protest by plaintiff.

"The Commissioner contends that the $97,730 in 1960 dividends and $4,120,418.65 in 1960 gain both constituted non-taxable income which under G.S. 105-147(9) (d) (2) — (4) was required to be offset against plaintiff's 1958-1960 losses in computing the net economic loss which could be carried over and deducted in 1961. Plaintiff contends that the dividends did not constitute non-taxable income and that the Commissioner's denial of the claimed refund has deprived plaintiff of a deduction for these dividends in contravention of Section 105-147(7) and 105-147(9) of the General Statutes. Further, plaintiff contends that the gain from the liquidation of the two subsidiaries constituted 'gain' rather than 'income' which did not economically benefit plaintiff and which was not 'non-taxable' but was merely not 'recognized' during 1960 under G.S. 105-144(c).

"This suit was instituted for refund of (1) the $2,423.44 alleged to have been erroneously paid and (2) the $12,596.04 assessment plus interest which was paid under protest. If the Commissioner's contention with respect to the $4,120,418.65 unrecognized gain is sustained, plaintiff would not be entitled to recover any amount because this gain alone would more than offset the $231,546.63 in operating losses without regard to the treatment given the $97,-730.00 in dividends. If plaintiff's contentions regarding the unrecognized gain are sustained, however, plaintiff would be entitled to recover the $12,596.04 with interest from June 10, 1963, the date of payment of assessment under protest. If, in addition, plaintiff's contentions regarding the $97,300.00 in dividends are sustained, plaintiff would be entitled to recover the $2,423.44 with interest from June 10, 1963, the date of denial of its claim for refund.

"Plaintiff has complied with all prerequisite statutory requirements and has exhausted its administrative remedies and is entitled to maintain and prosecute this action."

Based upon the agreed statement of facts, Judge Riddle entered a judgment ordering and adjudging that plaintiff take nothing by this action, dismissing its action, and taxing it with the costs.

The Attorney General moved in this Court to substitute Ivey L. Clayton, acting Commissioner of Revenue, as party defendant in the place and stead of W. A. Johnson, former Commissioner of Revenue. The Court allowed this motion on 2 March 1965.

From the judgment entered, plaintiff appeals to the Supreme Court.

*Moore and Van Allen by Robert W. King, Jr., for plaintiff appellant.*

*Attorney General T. W. Bruton and Assistant Attorney General Charles D. Barham, Jr., for defendant appellee.*

PARKER, J. Plaintiff has one assignment of error reading as follows: "For that the court erred in the signing and entry of judgment dismissing plaintiff's suit for refund, the facts, as appear on the face of the record, being insufficient to support the judgment." This assignment of error presents for review the question as to whether the agreed statement of facts support the judgment, and whether error of law appears on the face of the judgment. Strong's North Carolina Index, Vol. 1, Appeal and Error, § 21.

This statement appears in the agreed statement of facts: "If the Commissioner's contention with respect to the $4,120,418.65 unrecognized gain is sustained, plaintiff would not be entitled to recover any amount because this gain alone would more than offset the $231,546.63 in operating losses without regard to the treatment given the $97,730 in dividends." This quoted statement in the agreed statement of facts presents this basic question for decision, as stated in plaintiff's brief: "When on the liquidation of a wholly-owned subsidiary a parent corporation has a gain which under G.S. Sec. 105-144(c) is not recognized, is such gain nontaxable income which the parent must offset against its operating losses in computing the G.S. Sec. 105-147(9)(d) net operating loss deduction?" This quoted statement presents this basic question for decision, as stated in defendant's brief: "Does a capital gain which qualifies for nonrecognition as taxable income under the provisions of G.S. 105-144(c) constitute 'income from all sources in the year including income not taxable under this (Income Tax) Article of the Revenue Act' in determining net economic loss under G.S. 105-147 (6)(d) (now G.S. 105-147(9)(d))?" G.S. 105-147(6)(d) is the same section of our Income Tax Statute as G.S. 105-147(9)(d), and is expressed in substantially the same words, except that G.S. 105-147(9) (d)(2) was rewritten by Ch. 1169, p. 1610, 1963 Session Laws. This 1963 rewriting of G.S. 105-147(9)(d)(2) by the General Assembly is not relevant here on the basic question specifically stated above. This section is codified as G.S. 105-147(6)(d) in G.S. Vol. 2C, 1957 Cumulative Supplement to Recompiled Vol. 2C, 1950, and is codified as G.S. 105-147 (9)(d) in G.S. Vol. 2C—Replacement 1958, and as G.S. 105-147(9)(d) in G.S. Vol. 2D — Replacement 1965. It will hereafter be referred to as G.S. 105-147(9)(d).

Plaintiff makes these contentions: "Gain realized by plaintiff in the liquidation of a wholly-owned subsidiary should not reduce the carryover loss deduction authorized under G.S. 105-147(9)(d)." Upon the liquidation of its subsidiaries, it merely transferred its subsidiaries' as-

sets to its own books. G.S. 105-144(c) provides that any "gain" attendant upon such transfer will not be recognized for tax purposes. The non-recognition of gain on the liquidation of a subsidiary might well be a temporary condition, i.e., subsequent sale of the property by the parent corporation can result in the taxation of this gain.

G.S. 105-144(c) reads:

"No gain or loss shall be recognized upon the receipt by a corporation of property distributed in complete liquidation of another corporation, if the corporation receiving such property was on the date of the adoption of the plan of liquidation and has continued to be at all times until the receipt of the property the owner of stock (in such other corporation), possessing at least eighty per centum (80%) of the total combined voting power of all classes of stock entitled to vote, and the owner of at least eighty per centum (80%) of the total number of shares of all other classes of stock (except nonvoting stock which is limited and preferred as to dividends)."

It seems clear that the nonrecognition principle embodied in G.S. 105-144(c) was to permit a corporation to simplify its corporate structure, and to relieve a parent corporation from tax liability liquidation gains realized in a particular year as a result of corporate liquidation. However, the instant case on the precise basic question above stated does not involve taxation of liquidation gains or the public policy embodied in G.S. 105-144(c). The instant case is concerned with the application of the net economic losses provisions of G.S. 105-147(9)(d), and the only pertinent public policy considerations are those which underlie this particular section of the statute.

The net economic losses deduction claimed by plaintiff is described and defined in G.S. 105-147(9)(d). The pertinent parts of G.S. 105-147 so far as the instant case is concerned on the precise basic question above stated are as follows:

"§ 105-147. Deductions. In computing net income there shall be allowed as deductions the following items:

*        *        *

"(9) Losses of such nature as designated below:

*        *        *

"(d) Losses in the nature of NET ECONOMIC LOSSES sustained in any or all of the five preceding income years arising from business transactions or to capital or property as specified in (a) and (b) above subject to the following limitations:

"1. THE PURPOSE in allowing the deduction of net economic loss of a prior year or years is that of granting some measure of RELIEF TO TAXPAYERS WHO HAVE INCURRED ECONOMIC MISFORTUNE or who are otherwise materially affected by strict adherence to the annual accounting rule in the determination of taxable income, and the deduction herein specified does not authorize the carrying forward of any particular items or category of loss except to the extent that such loss or losses shall RESULT IN THE IMPAIRMENT OF THE NET ECONOMIC SITUATION of the taxpayer such as to result in a net economic loss as hereinafter defined.

"2. The net economic loss for any year shall mean the amount by which allowable deductions for the year other than contributions, personal exemptions, prior year losses, taxes on property held for personal use, and interest on debts incurred for personal rather than business purposes SHALL EXCEED INCOME FROM ALL SOURCES IN THE YEAR INCLUDING ANY INCOME NOT TAXABLE UNDER THIS ARTICLE." (Emphasis ours.) ("2" is. quoted as it appears prior to its being rewritten by the 1963 Session of the General Assembly. As rewritten in Ch. 1169, p. 1610, 1963 Session Laws, it reads:

"2. The net economic loss for any year shall mean the amount by which allowable deductions for the year other than personal exemptions, non-business deductions and prior year losses shall exceed income from all sources in the year including any income not taxable under this Article.")

The General Assembly was under no constitutional or other legal compulsion to permit a net economic loss or losses deduction for a corporation from taxable income in a subsequent year or years. It enacted the carry-over provisions of G.S. 105-147 (9) (d) "purely as a matter of grace, gratuitously conferring a benefit but limiting such benefit to the net economic loss of the taxpayer after deducting therefrom the allocable portion of such taxpayer's nontaxable income." *Rubber Co. v. Shaw, Comr. of Revenue*, 244 N.C. 170, 92 S.E. 2d 799.

It appears from the agreed statement of facts that during plaintiff's fiscal and tax year ending 30 June 1960, it liquidated two wholly-owned subsidiaries and realized a gain of $4,120,418.65. This gain was not included in plaintiff's state taxable income for the year 1960, because the gain qualified for nonrecognition under the provisions of G.S. 105-144 (c). Even though this liquidated gain of $4,120,418.65 did not constitute taxable income to plaintiff, it seems manifest that it did in fact constitute a gain and increased plaintiff's assets for the year by $4,120,418.65 over the value of plaintiff's two wholly-owned subsidiaries as carried in plaintiff's assets before the liquidation.

For its three fiscal and tax years ending 30 June 1958, 1959, and 1960, plaintiff had net operating losses apportionable to North Carolina under G.S. 105-134 in the total amount of $231,546.63. G.S. 105-147(9) (d) (2), in force at all times relevant here, provides in relevant part: "The net economic loss for any year shall mean the amount by which allowable deductions for the year * * * shall exceed income from all sources in the year including any income not taxable under this article."

G.S. 105-132(1) reads: "The word 'taxpayer' includes any individual, corporation, or fiduciary subject to the tax imposed by this article."

G.S. 105-140 reads: "The words 'net income' mean the gross income of a taxpayer, less the deductions allowed by this article."

G.S. 105-141(a) reads in relevant part: "The words 'gross income' mean the income of a taxpayer derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, business, commerce or sales, or dealings in property, whether real or personal, located in this or any other state or any other place, growing out of the ownership or use of or interest in such property, also from interest, rent, dividends, securities, or the transactions of any business carried on for gain or profit, *or gains or profits, and income derived from any source whatever and in whatever form paid.*" (Emphasis ours.)

In our opinion, and we so hold, plaintiff's gain in the amount of $4,120,418.65 realized from the sale of its two wholly-owned subsidiaries by reason of our statutory definition of "gross income" constitutes "income from all sources in the year including any income not taxable under this article," as stated in G.S. 105-147(9) (d) (2). Consequently, plaintiff is not entitled to any net economic losses deduction as sought in its complaint, and is not entitled to recover anything sought in this suit, because as stated in the agreed statement of facts "this gain [$4,120,418.65] alone would more than offset the $231,546.63 in operating losses without regard to the treatment given the $97,730. in dividends."

The Federal cases and statutes relied on by plaintiff are clearly distinguishable. We are here concerned with our own statutes.

Having reached this conclusion, the question presented for decision in plaintiff's brief reading: "When dividends received by a parent corporation from a subsidiary are deductible under G.S. Sec. 105-147 (7) (because all of the subsidiary's income was subject to taxation by North Carolina) does the parent thereby receive nontaxable income which must be offset against its operating losses in computing the G.S. Sec. 105-147(9) (d) net operating loss deduction?", has become moot.

The agreed statement of facts support Judge Riddle's judgment, and no error of law appears on the face of the record. The judgment below is .

Affirmed.