## BURLINGTON NORTHERN RAILROAD COMPANY, a Corporation, Plaintiff and Appellant,

v.

## Elma STRACKBEIN, As Treasurer of Fall River County, South Dakota, Defendant and Appellee,

and

## Mark V. Meierhenry, Attorney General, Intervenor and Appellee.

### No. 15247.

Supreme Court of South Dakota.

Considered on Briefs Sept. 15, 1986.

Decided Dec. 23, 1986.

---

**2.** We are required to note that Henderson, J., joined the dissent authored by Tapken, Circuit J.

F.M. Smith of Woods, Fuller, Shultz & Smith, Sioux Falls, for plaintiff and appellant.

Kenneth R. Dewell of Wilson and Dewell, Hot Springs, for defendant and appellee.

John Dewell, Asst. Atty. Gen., for intervenor and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on the brief.

MORGAN, Justice.

Burlington Northern Railroad Company (Railroad) brought this action against Elma Strackbein (Strackbein) in her official capacity as treasurer of Fall River County, South Dakota, to recover certain taxes paid under protest. Railroad claims that in spite of a 1981 amendment to SDCL 10–28–21.1 it is entitled to tax credits for rehabilitation work done on their tracks in Fall River County. Railroad claims SDCL 10–28–21.1 as amended is unconstitutional, and due to this claim the Attorney General elected to intervene in the suit. Each of the parties moved for judgment on the pleadings. The trial court denied Railroad's motion, but granted the motion of Strackbein and Attorney General. It is from this adverse determination that Railroad appeals. We affirm.

A motion for judgment on the pleadings is provided for by SDCL 15–6–12(c) which "like a motion to dismiss, now provides an expeditious remedy to test the legal sufficiency, substance, and form of pleadings. It is a proper remedy only when no issue of fact is raised. It deals only with questions of law arising from the pleadings." *Hauck v. Bull*, 79 S.D. 242, 244, 110 N.W.2d 506, 507 (1961). Appellant does not contend that the motion was inappropriate, but instead claims that the trial court reached the wrong result.

In 1974, the South Dakota Legislature, in an apparent effort to encourage railroads to upgrade their lines, provided a tax credit for certain rehabilitation work on railroad tracks. *See* 1974 S.D.Sess. Laws ch. 106.

The act provided for tax credits for one-third of the amount spent and certified, placed a ceiling limiting eligibility for the credit to lines carrying not more than one million net ton miles per mile annually, and had a sunset provision terminating the credits on July 1, 1979. The 1979 Legislature substantially reenacted the credit provision, but changed the accumulations of credits and, most significantly, deleted the one million net ton mile ceiling.

The 1981 Legislature, in amending the act, again attempted to clear up some of the language regarding the accumulations, delayed the credits for one year, and reimposed an eligibility ceiling excluding lines carrying more than ten million net ton miles per mile annually. The bill was amended on the floor of the House by raising the proposed ceiling from six million net ton miles to ten million net ton miles and by adding this sentence: "The provisions of this section do not affect credits certified prior to the passage and approval of this act." The statute was signed by the Governor on January 30, 1981, which constitutes the approval as referred to in the statute.

During the period between 1979 and 1981, Railroad made improvements to their rail lines in Fall River County. This Fall River County line carried more than ten million net ton miles per mile annually during that period. Railroad certified these track improvements after January 30, 1981, but prior to July 1, 1981. As a result, Railroad was assessed taxes by Fall River County which Railroad paid under protest.

Railroad raises two issues on appeal. The first centers on the sentence appended on the floor of the House referring to credits certified prior to "the passage and approval of this act," now codified to read "January 30, 1981." Railroad claims that this January 30, 1981, date should actually be read to effectively say July 1, 1981. Railroad claims that the language requiring certification prior to the "passage and approval" of the statute is a "legislative error in draftsmanship." If no error exists, Railroad alternatively argues that ap-plication of the statute as written "would result in the retroactive application of the law in contravention of the United States and South Dakota Constitutions."

Railroad's initial argument, simply put, is that the legislature actually meant to set the deadline on certification as of the "effective date" of the act rather than the date of its "passage and approval." The effective date was July 1, 1981.

At the outset, we note that when we are called on to interpret a statute granting an exemption, a deduction, or a credit that the statute is strictly construed against the taxpayer. *Bunge Corp. v. Commissioner of Revenue*, 305 N.W.2d 779 (Minn.1981); *Grant Farmers Mut. v. State by Conrad*, 347 N.W.2d 324 (N.D. 1984); *Keyes v. Chambers*, 209 Or. 640, 307 P.2d 498 (1957); *Fall River Canning Co. v. Wisconsin Dept. of Taxation*, 3 Wis.2d 632, 89 N.W.2d 203 (1958). "We have repeatedly stated that when the terms of a statute are clear, certain and unambiguous in their meaning, it is the function of the court to give them effect and not to amend the statute to avoid or produce a particular result." *Matter of Sales Tax Refund Applications*, 298 N.W.2d 799, 802 (S.D.1980). The last sentence of SDCL 10–28–21.1 is patently clear, certain, and unambiguous in its meaning. Railroad contends that a latent ambiguity is present because the language in the last sentence of the statute conflicts with Article III, § 22 of the South Dakota Constitution and SDCL 2–14–21. Railroad claims this ambiguity results in an absurd or unreasonable conclusion. *See Matter of Sales Tax Refund Applications, supra.*

Article III, § 22 of the South Dakota Constitution states in pertinent part: "No act shall take effect until ninety days after the adjournment of the session at which it passed...." We see no conflict between our Constitution and SDCL 10–28–21.1 since the statute did not take effect until July 1, 1981. The statute merely says that as of July 1, 1981, credits will be given for expenditures certified prior to January 30, 1981. We dealt with a similar question in

*Homestake Min. Co. v. Johnson*, 374 N.W.2d 357 (S.D.1985). In that case, Homestake Mining Company was required as of January 1, 1981, to begin calculations to determine tax liability. This was so even though the statute did not become effective until July 1, 1981. "Merely because the statute has some retroactive application, however, does not mean the statute 'takes effect before that date.'" *Id.* at 363.

■ Railroad also claims that SDCL 10–28–21.1 conflicts with SDCL 2–14–21, which states that no law will be retroactive unless that intention plainly appears. *See Homestake Min. Co.*, 374 N.W.2d at 363. We hold that the legislature plainly indicated the retroactive application by the specific and unambiguous requirement that certification take place prior to the passage and approval of the statute. Railroad claims that there is no reason for giving it such a short period to certify past expenditures. We disagree. Requiring certification by the time of approval of the statute may assist counties in their budgeting processes and could also lead to fewer claims being certified.

Railroad likens this case to that of *Elfring v. Paterson*, 66 S.D. 458, 285 N.W. 443 (1939), wherein a clerical error rendered the statute incapable of a reasonable construction. We find no indication of such an error in this case. Five legislative sessions have passed since the 1981 Session and Railroad has had ample opportunity to secure legislative amendment to what it claims is an ambiguous provision. No such change has been made. We hold that SDCL 10–28–21.1 is consistent with SDCL 2–14–21 and art. III, § 22 of the South Dakota Constitution.

■ Railroad alternatively argues that the retroactive application of the statute amounts to "an unconstitutional taking of property without just compensation in violation of the due process clause of the Fifth and Fourteenth Amendments to the United States Constitution and art. V, § 13 of the South Dakota Constitution." In its argument, Railroad characterizes SDCL 10–28–21.1 as a "retroactive tax" and cites us to authorities dealing with constitutionality of retroactive taxation. In truth, SDCL 10–28–21 directs that all railroad property shall be taxable at the same rate and for the same purposes as individuals within the various and sundry taxing districts in which the railroad's property is assessed. SDCL 10–28–21.1 simply provides for allowance of tax credits in certain cases and, to the extent such credits are properly certified, relieves the railroad from some tax liability. A tax credit is a rebate and not a tax. *See Butcher v. Department of Treasury*, 425 Mich. 262, 389 N.W.2d 412 (1986).*

Furthermore, to establish a "taking" there must first be established a "property right." "A provision allowing a credit against a state tax is, in effect, an exemption from liability for a tax already determined and admittedly valid.... [D]eductions or exemptions as a legislature may allow ... are privileges accorded as a matter of legislative grace and not as a matter of taxpayer right." *Keyes v. Chambers*, 209 Or. 640, 645, 307 P.2d 498, 501 (1957). *See State v. L. & A. Contracting Co.*, 241 Miss. 783, 133 So.2d 546 (1961); *Aberfoyle Manufacturing Co. v. Clayton*, 265 N.C. 165, 143 S.E.2d 113 (1965); *Southern Weaving Co. v. Query*, 206 S.C. 307, 34 S.E.2d 51 (1945); *Christopher v. James*, 122 W.Va. 665, 12 S.E.2d 813 (1940); 85 C.J.S. *Taxation* § 1099 (1954). In view of the foregoing authorities we hold that since the statutory language clearly provides that the credits will be given only after certification, Railroad had no property right to the tax credit.

Judgment on the pleadings for Strackbein and Attorney General is affirmed.

WUEST, C.J., and HENDERSON, J., concur.

---

* We note in passing that retroactive taxes are constitutionally permissible in certain circumstances. *See Welch v. Henry*, 305 U.S. 134, 59 S.Ct. 121, 83 L.Ed. 87 (1938); *Blodgett v. Holden*, 275 U.S. 142, 48 S.Ct. 105, 72 L.Ed. 206 (1927).

SABERS, J., and FOSHEIM, Retired Justice, dissent.

MILLER, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.

SABERS, Justice (dissenting).

I dissent for the following reasons:

In 1974, a rehabilitation tax credit for railroad repair work done in this state was first allowed by statute. 1974 S.D.Sess. Laws 106. That law permitted a credit against the taxes assessed within any taxing district for expenditures in replacement and repair of existing trackage. The credit could be spread over a three year period in equal installments. By its terms, the statute ceased to be effective July 1, 1979.

In 1979, the statute was, in effect, reenacted by the legislature and codified as SDCL 10-28-21.1. Its provisions were substantially similar to the 1974 act although expanded in scope. In 1981, the legislature amended the statute to its present form. 1981 S.D.Sess. Laws 93 (the Act).[1]

During the period January 1, 1980 to December 31, 1980, Railroad engaged in the replacement and repair of existing trackage owned by it within various taxing districts in Fall River County, South Dakota, which entitled it to tax credits in the amount of $249,917.31, against taxes paid. On or about April 3, 1981, Railroad certified its expenditures in connection therewith as provided by statute and claimed a credit of one-third of the amount certified for each taxing district involved as a credit against taxes.

The total of the claimed credits for the years 1981 and 1982 of $132,188.81, and for 1983 of $117,728.50, were paid under protest pursuant to the provisions of SDCL 10-27-2. These payments were received and retained by defendant Fall River County.

Although Railroad advances reasonable arguments in support of its position that the legislature never intended the act to be interpreted retroactively, there is no real reason to address those arguments in view of the holding of the trial court and the majority.

Under the holding of the trial court, which holding is affirmed by the majority, the Act has a retroactive effect in that it denies the taxpayer credit which was earned in 1980 under 1980 law. Therefore, the Act is unconstitutional in that it is unreasonably retroactive in its application against this taxpayer. Therefore it is not necessary to determine whether the legislature intended the Act to be retroactive or not.

A retroactive law is one that attributes consequences to situations existing or transactions occurring before the law went into effect. *State ex rel Strenge v. Westling,* 81 S.D. 34, 130 N.W.2d 109, 111 (1964) *Pabst v. Commissioner of Taxes,* 136 Vt. 126, 388 A.2d 1181 (1978). The harshness and oppressiveness of a retroactive tax depends on two factors: (1) the degree to which the taxpayer is surprised by the law attributing consequences to his past conduct, *Blodgett v. Holden,* 275 U.S. 142, 48 S.Ct. 105, 72 L.Ed. 206 (1927), and (2) the likelihood that the taxpayer would have altered that conduct if he had foreseen the retroactive features of the challenged law. *Welch v. Henry,* 305 U.S. 134, 59 S.Ct. 121, 83 L.Ed. 87 (1983). *See also: Milliken v. United States,* 283 U.S. 15, 51 S.Ct. 324, 75 L.Ed. 809 (1931).

A retroactive application of SDCL 10-28-21.1 as applied to this taxpayer would be an unconstitutional taking of property

---

1. The Act was titled: Railroad Tax Credit Restricted. It bears the preamble "ENTITLED, An Act to delay the railroad tax credit to one year following certification and to restrict the credit to lines carrying less than ten million net tons annually." As its preamble states, the major changes effected by the amendments were to delay the point at which the railroad could take the credit for repair work done, and to restrict the application of the credit to companies carrying no more than ten million net ton miles per mile annually. SDCL 10-28-21.1 concludes with this language: "The provisions of this section do not affect credits certified prior to January 30, 1981."

without just compensation in violation of the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution and Article IV, Section 13 of the South Dakota Constitution.

Railroad's trackline repair was completed by the time the legislation in question was introduced and passed during the 1981 session. Railroad could hardly be expected to foresee the enactment of a law removing credits before the effective date for legislation passed in the 1981 session, which was July 1, 1981. It is not the policy of this state to encourage an investor to spend its money improving South Dakota's deteriorating trackline, then tell that investor, after the work is done and the money spent, that the tax benefit which induced the investment is no longer available.

The second consideration in determining whether a retroactive tax is unconstitutional is whether the taxpayer who suffers from the retroactive tax would have altered its conduct had it foreseen the retroactive features of the challenged law. *Welch, supra.* During 1980, Railroad invested hundreds of thousands of dollars in rehabilitation and repair of track in this state. It is reasonable to assume that, in the absence of the statutory credit for repair, Railroad would not have undertaken such an extensive and massive overhaul.

The application of constitutional standards impels the conclusion that the tax imposed on Railroad was unconstitutional under *Blodgett, Welch* and *Milliken, supra.* The problem in this case is simply that the prior legislature passed an unwise law which allowed far too much credit against far too little tax.

Accordingly, it is simply unfair to Railroad to eliminate the credit now for the repairs previously made in reliance on the then existing law.

I am authorized to state that FOSHEIM, Retired Justice, joins in this dissent.