569 So.2d 297 (1990)
PURCELL COMPANY, INC. (Formerly Diamondhead Corporation)
v.
MISSISSIPPI STATE TAX COMMISSION.
No. 07-CA-58872.
Supreme Court of Mississippi.
October 17, 1990.
*298 Walter J. Phillips, Gex Gex & Phillips, Bay St. Louis, Henry T. Benedetto, Matawan, N.J., for appellant.
Gary W. Stringer, Bobby R. Long, Jackson, for appellee.
Before DAN M. LEE, P.J., and SULLIVAN and ANDERSON, JJ.
ANDERSON, Justice, for the Court:
This is a civil appeal from the Chancery Court of Hancock County which affirmed the Mississippi Tax Commission's assessment of additional income taxes against Purcell Company, Inc. We find no merit to Purcell's challenge of Mississippi's apportionment formula for purposes of State taxation. Purcell did not prove that the formula was arbitrary or unreasonable. Therefore, we affirm that portion of the lower court's judgment. However, we are of the opinion that the lower court erred in disallowing as a deduction on Purcell's income taxes, expenditures to its affiliates as "ordinary and necessary" business expenses. Therefore, we reverse and render the judgment on that issue.

*299 I.
This case involves the Mississippi activities of Purcell,[1] a Delaware corporation primarily in the business of developing large tracts of land into planned communities with an emphasis on recreational activities. Specifically, we are concerned with the tax consequences of Purcell's formation of two (2) wholly owned subsidiaries to advance the development of the Diamondhead community on the Mississippi Gulf Coast, Diamondhead Yacht and County Club, Inc. and Diamondhead Utility Co., Inc. Purcell was audited by the Mississippi State Tax Commission for the tax years May 1976 through December 1976 and January 1977 through December 1978. The Commission concluded Purcell owed approximately $102,000.00 in corporate income taxes for the period covered by the audit. The Tax Commission Board of Review reduced the amount to $96,496.24, and a full Tax Commission Order was entered reducing the amount to $92,992.56.
After exhausting administrative procedures the chancery court appointed a Special Master at the request of Purcell. Purcell offered testimony that it funded construction costs of various common facilities and purchased equipment in order to create a resort development and increase property value. The amenities included a paved airstrip and hanger, yacht club, marina, bait shop, tennis complex, country club, thirty-six hole golf course, stables, three recreational centers, swimming pools and camper park.
Diamondhead Yacht and Country Club, Inc. was formed to manage these amenities, as well as maintain the private roads in the subdivision. Purcell intended Country Club to transfer the responsibilities of these facilities to Diamondhead Country Club and Property Owners Association, Inc. by June 30, 1985, or when ninety-nine percent (99%) of the lots were sold, which ever occurred first. Purcell collected dues from the lot owners to fund the operating cost of the amenities. For intercompany purposes the dues were shown as revenue in Country Club.
The State Board of Health required Purcell to form a separate corporation to develop, install and maintain a water system and a sewer disposal/treatment system before it could obtain certification from the Mississippi Public Service Commission. Without these systems Purcell would not have been able to sell any properties in Diamondhead. Therefore, in November 1972 Diamondhead Utility Company, Inc. was formed.
Country Club and Utility Co. were wholly owned subsidiaries of Purcell. Both maintained separate books for intercompany purposes, however, neither had a bank account, all revenue from the entities was put into Purcell's checking account, and all expenses and payroll were paid out of Purcell's account. Thus, when both entities operated at a loss and expenses exceeded revenues, Purcell covered the costs.
The State Tax Commission offered testimony of Purcell's audit. The Commission found in part that all of the subsidiaries were wholly owned by Purcell and that it had improperly deducted from its income taxes funds expended to Country Club and Utility Co. as "ordinary and necessary" business expenses.
At the conclusion of the Hearing the Special Master submitted a report with recommendations for the disposition of the issues to the chancery court. Thereafter, the chancery court entered its Final Judgment in which it found that Country Club and Utility Co. were separate and distinct corporations from Purcell and were not merely agents of Purcell. The trial court entered its Order accordingly.

II.
Purcell contends that the services performed by the subsidiaries were vital to its business and the expenditures to the subsidiaries were beneficial to Purcell. And, for this reason, Purcell argues it was entitled *300 to deduct the losses experienced by its subsidiaries.
The Tax Commission contends that the expenses paid by Purcell were incurred in the business operation of Country Club and Utility Co. rather than Purcell's and that each subsidiary engaged in a business separate and distinct from Purcell, making their losses attributable only to them individually. The Commission maintains that the funds expended by Purcell were either loans or contributions to capital. Thus, Country Club and Utility Co. should have reflected losses claimed by Purcell in their respective returns. Secondly, the Commission contends that no exceptional circumstances exist in order to ignore the corporate existence of the subsidiaries.

III.

A.
In accord with various principles of appellate review, there is a presumption of correctness to the Tax Commission's ruling; and the taxpayer has the burden of proving the Commission wrong. State of Mississippi and State Tax Commission v. L. & A. Contracting Co., 241 Miss. 783, 133 So.2d 546 (1961); Kilpatrick v. Commissioner of Internal Revenue, 227 F.2d 240 (5th Cir.1955); Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212 (1933). Similarly, the State Tax Commission's construction of a statute it is charged to administer and enforce is entitled to considerable weight. General Motors Corp. v. State Tax Commission, 510 So.2d 498, 500 (Miss. 1987).

B.
The major characteristics of a pure corporation are: (1) associates; (2) an objective to carry on business and divide the gains therefrom; (3) continuity of life; (4) centralization of management; (5) liability for corporate debts limited to corporate property; and (6) free transferability of interests. Income Tax Regulation § 301.7701-2(a)(1).
For tax purposes, a corporation exists if formed for a business purpose or if it carries on business after incorporation. Moline Properties, Inc. v. Commissioner of Internal Revenue, 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499 (1943). Only one of the two parts of the Moline Properties test need be satisfied. United States v. Creel, 711 F.2d 575, 578 (5th Cir.1983) cert. den. 464 U.S. 1044, 104 S.Ct. 714, 79 L.Ed.2d 177 (1984). See, also, Evans v. Commissioner of Internal Revenue, 557 F.2d 1095, 1099 (5th Cir.1977); United States v. State Tax Commission of State of Mississippi, 505 F.2d 633 (5th Cir.1974); Britt v. United States, 431 F.2d 227, 234 (5th Cir.1970). A corporation must engage in some industrial, commercial or other activity besides avoiding taxation. National Investors Corp. v. Hoey, 144 F.2d 466 (2nd Cir.1944). And, a taxpayer who chooses to conduct business through a corporation, will not subsequently be permitted to deny the existence of the corporation if suitable for tax purposes. See, e.g., Moline Properties, Inc. supra.
The United States Supreme Court acknowledges recognized exceptions to the Moline two-part test for tax purposes: "[W]hatever the corporate device for ownership, may call for the disregarding of the separate entity... . In general, in matters relating to the revenue, the corporate form may be disregarded where it is a sham or unreal. In such situations the form is a bald and mischievous fiction." Moline Properties, supra 319 U.S. at 438-439, 63 S.Ct. at 1133-34 (citations omitted). See, also, 6 Federal Tax Coordinator 2d §§ 1206, 1211 at pp. 18,041, 18,045 (a "passive" or a "dummy" corporation will be disregarded for tax purposes, but one that engages in an activity of a business or commercial nature will not be). Britt, 431 F.2d at 235, 237 (a determination of whether a corporation engages in business is made upon the facts of each case rather than the quantum of business.
The special master found that both country club and Utility Co, Inc. performed functions that amounted to business operations of their own:
country club: presumption of its own:
1. employees

*301 2. insurance
3. payroll
4. payroll tax returns
Utility Co., Inc.:
1. Legal title to all facilities
2. Presumption that all applications to MSPC filed in its own name.
These findings are supported by substantial evidence. Based upon the state of the law described above and the findings of the special master, we hold that Country Club and Utility Co., Inc. are separate corporations and their separate corporate existence should and must be respected.

C.
This does not answer our inquiry where we must still consider whether the expenses of these two subsidiary corporations were ordinary and necessary expenses of Purcell. For the reasons set forth below, we find Purcell's argument persuasive.
Deductions on an income tax return are not a matter of right; they are a statutory grant, which must be provided clearly under the statute. The issue generally is one of fact or a mixed question of law and fact. The taxpayer has the burden of proving that the facts bring the case squarely within the deduction provisions of the statute. L. & A. Contracting Co., 133 So.2d at 549 (citing Tupelo Garment Co. v. State Tax Commission, 178 Miss. 730, 746, 173 So. 656 (1937). See, also, Webb v. United States, 560 F. Supp. 150 (S.D.Miss. 1982); Republic National Bank of Dallas v. Commissioner of Internal Revenue, 334 F.2d 348 (5th Cir.1964); W.D. Haden Co. v. Commissioner of Internal Revenue, 321 F.2d 169 (5th Cir.1963); Interstate Transit Lines v. Commissioner, 319 U.S. 590, 63 S.Ct. 1279, 87 L.Ed. 1607 (1943).
The issue in the case sub judice arises in the context of Section 27-7-17(a), Mississippi Code Annotated as it existed prior to its amendment. At that time Section 27-7-17(a), provided in pertinent part that "[i]n computing the net taxable income, there shall be allowed as deductions all the `ordinary and necessary expenses' paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered."
No exact definition exits for the term "ordinary and necessary"; each case must be determined on the basis of its own facts and circumstances. Jones v. Commissioner of Internal Revenue, 242 F.2d 616, 620 (5th Cir.1957) (citation omitted). See, also, Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212 (1933) (such business expenses must be both an "ordinary" expense and a "necessary" expense since the terms are used conjuctively); Motion Picture Capital Corp. v. Commissioner of Internal Revenue, 80 F.2d 872 (2nd Cir.1936) (expenses must be incurred by a taxpayer in doing the ordinary and necessary things required for his business to make it function as such, and must be necessary in the ordinary course of its conduct).
Generally for a business expense to be deductible it must be paid or incurred in connection with the carrying on of a trade or business of a taxpayer. Implicit therein is the assumption that if an expense is paid or incurred by the taxpayer in connection with the carrying on of a trade or business of someone else, such expense is generally not deductible by anyone, even though the taxpayer receives a benefit from incurring such expense.
6 Mertens, Law of Federal Income Taxation § 25.18 at p. 76 (1988).
In L. & A. Contracting Company, supra, the Court, relying on Welch v. Helvering, supra and White v. Commissioner of Internal Revenue, 61 F.2d 726 (9th Cir.1932), stated:
Ordinarily, an expense will be considered `necessary' if the expenditure is appropriate and helpful in developing and maintaining the taxpayer's business. Considerable weight is given to the taxpayer's judgment.
* * * * * *
In determining what is an ordinary expense, custom and practice in the business world usually furnish reliable guidance. It is affected by the time, place *302 and circumstances of the particular expenditure, which does not have to be habitual and normal in terms of frequency. It may be `ordinary' in the sense that it is not unusual in the experience of the group or community of which taxpayer is a part. The distinction often is that of degree and not of kind.
* * * To be `ordinary and necessary' the expenditure must have some reasonably proximate relation to the customary conduct of the taxpayer's business. Moreover, it is generally held that a business expense must be paid in connection with the carrying on of the business of the taxpayer, not of someone else, even though the taxpayer might obtain some benefit.
133 So.2d at 550 (citation omitted).
Ordinarily, the separate corporate identities of corporate subsidiaries preclude the parent corporation from deducting expenses incurred or losses sustained by its subsidiary. This rule is recognized in Interstate Transit Lines, supra, the theory of which is that payment by the parent to cover expenses or losses of the subsidiary is related to the business of the subsidiary and not to its own business. There is an exception to this general rule, however, recognized in Fishing Tackle Product Co. v. Commissioner, 27 T.C. 638, 644 (1957), and best articulated by the tax court of the United States in Fall River Gas Company v. Commissioner, 42 T.C. 850 (1964). At issue in Fall River was whether the parent gas company could deduct expenses of a wholly owned subsidiary. The tax court held that it could, distinguishing Interstate Transit Lines, supra, as follows:
... [T]he situation here is different. The gas company had a substantial interest in increasing its own sales of gas and the expenses paid by it were intended to promote its own business wholly apart from that of the subsidiary. This distinction was explicitly noted in Interstate Transit Lines, supra, at 594 and was regarded as pivotal by this Court in Fishing Tackle Products, 27 T.C. 638, 644. We think that the expenditures involved in the items (i) (ii) and (iv), which would have the quality of deductible expenses, if made by the subsidiary, are similarly deductible by the parent, when paid by the parent, because directly related to its business and need not be capitalized... .
Fall River, 42 T.C. at 858.
The Fishing Tackle/Fall River exception to the general rule has been recognized in United States v. Berger, 456 F.2d 1349, 1351 (2d Cir.1972); Freedman v. United States, 266 F.2d 291, 295 (6th Cir.1959); and Frito-Lay, Inc. v. United States, 209 F. Supp. 886, 891 (N.D.Ga. 1962).

IV.
Country Club and Utility Co. were formed in the ordinary course of Purcell's business, i.e., developing planned communities with an emphasis on recreational activities. More importantly, the Special Master found it was a business necessity for Purcell to provide for the management and maintenance of the amenities and roads to fulfill its obligations to the purchasers and to further and promote continued sales, as well as for Purcell to install and maintain the water and sewer systems and the facilities related thereto. Thus, the expenses in question were directly related to the business of the parent corporation (Purcell).
We are of the opinion that in applying these findings to the statute and the well-established principles of general tax law herein that the Special Master and trial court erroneously disallowed the deductions. Purcell met its burden of overcoming the presumption of the correctness of the Tax Commission's ruling. Therefore, we reverse the judgment and allow the expenditures by Purcell to cover Country Club and Utility Co. deficits to be deducted from its income taxes as "ordinary and necessary" business expenses.

V.
We find no merit to the second issue raised by Purcell and affirm that portion of the judgment. Therefore, it will not be discussed herein.
AFFIRMED AS TO PURCELL'S CHALLENGE OF MISSISSIPPI'S APPORTIONMENT *303 FORMULA FOR PURPOSES OF STATE TAXATION.
REVERSED AND RENDERED AS TO DISALLOWING AS A DEDUCTION ON PURCELL'S INCOME TAXES, EXPENDITURES TO ITS AFFILIATES AS "ORDINARY AND NECESSARY" BUSINESS EXPENSES.
ROY NOBLE LEE, C.J., and HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and BLASS, JJ., concur.
NOTES
[1] Purcell Corporation was formally known as Diamondhead Corporation for the tax period in question in this cause.